OPINION OF THE COURT
David B. Saxe, J.
Marie Luisi, formerly a senior officer at the J. Walter Thompson advertising agency in New York City has sued her former *292 employer for a series of ordinary and exotic torts growing out of public charges allegedly made by agency officials in the course of their discovery and handling of a massive financial crisis that shook the advertising world to its foundations.
Of particular importance is the issue of whether plaintiff’s second amended complaint states causes of action for libel and breach of an employment contract.
The gravamen of Ms. Luisi’s complaint is that J. Walter Thompson Company officials, in an effort to cover up massive accounting blunders and escape unscathed from public scrutiny, embarked upon a scheme to publicly discredit plaintiff and blame her for their own corporate ineptitude.
The essential facts are these:
Plaintiff’s employment with J. Walter Thompson Co. began approximately 25 years ago when she was hired as a secretary. She was regularly promoted and eventually assumed the position of senior vice-president/director of communications services, and became a member of the board of directors.
Ms. Luisi’s primary expertise and responsibility at J. Walter Thompson Co. was commercial time “spot” buying through a process known as barter syndication. This process may be summarized as follows: J. Walter Thompson Co. would acquire licenses to television, radio and cable programs from various sources such as production companies, producers and distributors. These licenses would then be given to local stations throughout the Nation in exchange for commitments to provide J. Walter Thompson Co. with commercial advertising time on their stations. This commercial time would then be recorded in time banks and sold to J. Walter Thompson’s advertising clients. Although the commercial time buying unit had gross billings of over $300,000,000 per year, it operated freely without the constraints of written contracts. Instead, the transactions were generally consummated by nothing more than a handshake.
In 1978 corporate officials discovered irregularities in cash flow, accounts receivables and time banks within the Barter Syndication Unit. Apparently, the unit’s actual revenue was substantially less than that reflected by the records maintained in the corporation’s computer system. Although a $1,000,000 tax write off for these losses was considered, corporate executives instead organized a committee, of which plaintiff was a member, to oversee the unit’s operations and solve the financial difficulties. When, in 1981, the financial difficulties persisted, J. Walter Thompson Co. approached their independent auditors, Price Waterhouse, for a solution. It is plaintiff’s belief that this *293 meeting resulted in an agreement under which Price Water-house would “sign off” on the fiscal 1981 financial statements and J. Walter Thompson Co. would restate their earnings for the years 1978-1981, while holding out a corporate executive to the public, as being responsible for the financial losses which necessitated the restatement of earnings. However, Price Water-house’s subsequent repudiation of this agreement led defendants to devise a scheme, according to the plaintiff, whereby she would be made the “scapegoat” for all of J. Walter Thompson’s financial difficulties.
Plaintiff further alleges that in compliance with this scheme, the defendants began a campaign to discredit her. To this end, an illusory investigation. was conducted where insinuations were made to those questioned that plaintiff was an alcoholic, involved with drugs and gambling, and was sexually promiscuous.
Of particular importance is a press release published by defendants on March 30, 1982. This press release announced that a restatement of earnings showing a loss of over $30,000,000 was necessary due to the discovery of financial irregularities in the company’s Barter Syndication Unit. The release attributed the irregularities to improper purchases of spot television time without corresponding client commitment for its use, as well as to false entries into the computer system which vastly overstated revenue, thus giving the impression that the Barter Syndication Unit was more prosperous and successful than it actually was. Although Luisi was not in charge of the unit’s computer system, the press release stated that “[i]t was the conclusion of the special investigation that Marie Luisi was responsible for the improper activities enumerated above, as well as other improprieties. Accordingly, Mrs. [sic.] Luisi has been dismissed effective March 31, 1982.” In addition, the release asserts that “the task of the investigative team was complicated by the fact that in late January 1982 Mrs. [sic.] Marie Luisi, then head of syndication and spot buying in J. Walter Thompson U.S.A., left the offices of the company, and has been unavailable for questioning despite repeated requests to her lawyer.” Also appearing in the release is a statement made by defendant Johnston, chairman and chief executive officer of J. Walter Thompson Co.: “We take satisfaction in the fact that our own dedicated and capable people discovered the problem. As long as business depends on human beings, we will all be vulnerable to human frailty. We’re not the first ones to discover that * * * We won’t be the last. In today’s world you are *294 more than ever dependent on the personal integrity of the people involved.”
The defendants assert that the plaintiff’s cause of action for libel must be dismissed since this press release does not support an action in libel per se and the plaintiff has failed to show special damages which are required in an action for libel innuendo.
An action in libel per se may be maintained when a publication is defamatory upon its face while an action premised upon libel innuendo, which requires special damages, is necessary when the publication requires extrinsic evidence to explain its defamatory meaning. (Tracy v Newsday, Inc., 5 NY2d 134 [1959].)
An analysis of this distinction supports the conclusion that the March 30,1982 press release provides sufficient basis for an action in libel per se since, when given a fair and natural construction (Busk v Ezyindex Prods. Corp., 35 Misc 2d 780, affd 18 AD2d 700 [2d Dept 1962]), this press release may reasonably cause the reader to believe that Marie Luisi committed criminal acts, was incapable of performing her job, and lacked professional ethics. These statements have injured Luisi’s professional reputation and support a cause of action in libel per se. (November v Time Inc., 13 NY2d 175 [1963]; Mason v Sullivan, 26 AD2d 115 [1st Dept 1966].) Thus, special damages need not be shown and the defendant’s motion to dismiss this cause of action is denied.
In her second amended complaint, plaintiff sets forth for the first time, allegedly libelous statements made by the defendants which appeared in various magazines from April 1982 through August 1982. While acknowledging that ordinarily the applicable one-year Statute of Limitations (CPLR 215) would bar these additional libel claims (because her second amended complaint was served after July 1984, over a year after these publications had occurred), she argues that CPLR 203 (e) saves these additional libel claims from being time barred by permitting them to relate back to the libels alleged in the original complaint. Since her original complaint was timely served, she contends that these additional causes of action for libel must also be deemed timely served.
I disagree.
CPLR 203 (e) states that “claim asserted in an amended pleading is deemed to have been interposed at the time the claims in the original pleading were interposed, unless the original pleading does not give notice of the transactions, occur *295 rences, or series of transactions or occurrences, to be proved pursuant to the amended pleading.” Thus, CPLR 203 (e) will save an amended claim from being barred by the Statute of Limitations when the amended complaint merely sets forth additional theories of liability based on previously pleaded facts. (Caffaro v Trayna, 35 NY2d 245 [1974]; Bilhorn v Farlow, 60 AD2d 755 [4th Dept 1977].) In Caffaro, the court permitted the plaintiff to amend her personal injury action to include a cause of action for wrongful death after the statutory period had run since the previously pleaded facts supporting the personal injury claim would also support the wrongful death claim. Similarly, in Wedeck v Barron’s Educ. Series (198 NYS2d 924 [Sup Ct, NY County 1960]), the court held that an amended complaint sounding in libel was not time barred where the defendants were given notice of the specific conduct of which the plaintiff complained and the specific claims in libel which the plaintiff attempted to assert in the original complaint.
But here, the plaintiff attempts to raise not only additional libel claims, but also, additional facts upon which these claims are based. The original complaint that sets forth the libelous words of the March 30, 1982 press release did not give notice to the defendants of the alleged libels contained in the various publications between April and August of 1982. A similar situation existed in Municipal Training Center v National Broadcasting Corp. (87 Misc 2d 1044 [Sup Ct, Spec Term, NY County 1976]). There the court held, quoting Hartmann v Time, Inc. (166 F2d 127, 136, cert denied 334 US 838 [1948]), that “with respect to libel actions, despite * * * CPLR 203 (subd [e]), each publication gives rise to a separate cause of action which does not relate back to the earlier publication^].” Thus, the plaintiff was not permitted to raise additional libelous publications in the amended complaint and relate them back to the libels alleged in the original complaint for the purpose of avoiding the Statute of Limitations.
Plaintiff further asserts that when allegations in an amended complaint are merely an expansion or amplification of the allegations in a timely original complaint, they relate back to the time of the original complaint and may not be barred by the Statute of Limitations. (Kaplan v Ginsburg, Inc., 14 Misc 2d 356, mod 8 AD2d 726 [2d Dept 1959]; Scott v Allen, 41 NYS2d 241 [Sup Ct, Spec Term, Kings County 1943].)
The additional libels asserted in the second amended complaint cannot be saved by the amplification-expansion theory advanced by the plaintiff. An analysis of the cases accepting this *296 theory of amplification shows that, in each, the language of the original complaint, although inadequately pleaded, embraced everything that was alleged in the amended complaint. Here, the second amended complaint asserts additional causes of action in libel as well as additional facts upon which these new claims are based. As a result, plaintiff’s second amended complaint cannot be held to amplify or expand those causes of action previously asserted in the original complaint.
Plaintiff’s second amended complaint also sets forth a fifth and sixth cause of action for breach of contract premised upon a written company policy manual which purports to award severance pay to employees whose services are involuntarily terminated without cause.
Plaintiff alleges that she was hired in approximately 1958 and was involuntarily dismissed on or about March 30, 1982 and is therefore entitled to severance pay in accordance with the company policy for over 24 years of service. The policy manual upon which plaintiff relies was not issued until October 1981, and did not become effective until January 1982, two months prior to her dismissal.
The issue here is whether an employer is bound by its company policy manual with respect to employees whose employment began prior to the issuance of the manual.
In support of their motion to dismiss the count, defendants cite Edwards v Citibank (100 Misc 2d 59 [Sup Ct, NY County 1979], affd 74 AD2d 664 [1st Dept 1980]). That case establishes the rule that company policy manuals setting forth conditions of employment which could be unilaterally amended or withdrawn, do not create situations where the application of the doctrine of equitable estoppel would be appropriate so as to preclude employers from terminating employment except in compliance with such manuals.
The defendants further contend that since the conditions set forth in Weiner v McGraw-Hill, Inc. (57 NY2d 458 [1982]) have not been satisfied here, the causes of action for breach of contract must be dismissed. In Weiner the court held that company policy manuals are binding between employers and employees when:
(1) the employee was induced to leave a prior place of employment with the assurance of statements contained in the policy manual;
(2) such assurances were incorporated into the employment application;
*297 (3) plaintiff turned down other offers for employment in reliance on assurances contained in the policy manual; and
(4) employment was subject to provisions in the policy manual. (O’Donnell v Westchester Community Serv. Council, 96 AD2d 885 [2d Dept 1983].)
Ms. Luisi maintains that the above cases are not controlling because the issue here is not an improper termination of employment but rather the rights to employee benefits contained in a company policy manual. In support of this argument she relies on Saunders v Big Bros. (115 Misc 2d 845 [Civ Ct, NY County 1982]) which, as in this case, involved an assertion of breach of contract by an employee when the employer failed to award the plaintiff severance pay in accordance with the policy manual. The court permitted the cause of action to stand, finding that the policy manual was an implied part of the employment contract as it was incorporated by reference into the plaintiff employee’s contract which stated “Your fringe benefits will be as outlined in the agency manual.”
These cases indicate that provisions contained in company policy manuals are not binding as between employers and employees unless there is substantial evidence that such manual provisions were relied on when the employment contract was entered into.
In Weiner v McGraw-Hill, Inc. (supra) and Saunders v Big Bros, (supra), the plaintiffs each relied on the provisions contained in the policy manual when beginning their employment since the provisions in these manuals were incorporated by reference into their employment contracts. As a result, there was sufficient evidence to support the conclusion that both parties, employer and employee, intended to be bound by the provisions set forth in the company manual and that a contract based on those provisions had been intended. The standard of whether a contract may be implied is “whether a reasonable man would think the parties intended the (contract)”. (3 Corbin, Contracts §§ 561-572 [1952].)
Here, however, plaintiff had been employed for approximately 24 years with the defendants prior to the issuance of the policy manual. Despite her allegations to the contrary, I hold as a matter of law that an essential element of Ms. Luisi’s cause of action for breach of contract, i.e., reliance, cannot be established and, accordingly, the motion to dismiss the fifth and sixth cause of action is granted.