OPINION OF THE COURT
Kristin Booth Glen, J.
This case presents an important issue of first impression — whether internally promulgated regulations governing employee benefits are binding on the employer who issued them. Plaintiff Dawn Saunders (hereinafter Ms. Saunders) relies on such regulations, here contained in a personnel manual, in this action for two weeks’ severance pay brought against Big Brothers, a private charitable agency. Ms. Saunders, a former employee of Big Brothers, was discharged for incompetence. The personnel manual promulgated by Big Brothers provides for two weeks’ severance pay to employees discharged for incompetence who have been with Big Brothers for over a year. Although Big Brothers concedes that Ms. Saunders was hired more than a year prior to her termination, it contends that since she was still on probation when she was fired, the provision *846 does not apply. Additionally, as a matter of law, it contends that the manual has no binding effect.
There is no dispute as to the chronology of events in this' case. Both parties agree that Ms. Saunders was hired as a social worker by Big Brothers on October 5, 1979. A letter back-dated to October 4 set out the various terms of the employment contract, and stated that “Your fringe benefits will be as outlined in the Agency Manual”.[1] The letter also provided that she would be evaluated at the end of the six-month probationary period, and again after one year.
At the end of six months, Ms. Saunders received an evaluation which stated that although her performance had not been adequate to successfully complete probation, probation would be extended four months to August 5, 1980. She heard nothing further until she was notified on November 20, 1980 that she would be terminated four weeks later. Ms. Saunders’ complaint has been heard and rejected by the grievance committee set up by Big Brothers to resolve such disputes, a proceeding not binding upon this court.
The employee manual provides in “Article II., Termination Procedures” that two weeks’ notice be given to permanent full-time staff who are dismissed for incompetence, and that two weeks’ severance pay be provided for those employed one year or more. There is nowhere any mention of probation as a consideration for determining eligibility for either notice or severance pay.[2] Accordingly, this court finds on the facts that under the plain language of the manual, Ms. Saunders is entitled to two weeks’ severance pay. Only the question of law remains — i.e., what is the binding effect of an employee manual?
The bargaining process for an employment contract is generally characterized by an unequal distribution of power; especially in times of high unemployment, the employer has the upper hand. To refuse to give binding effect to written representations made by an employer with *847 every expectation of encouraging employee reliance on them would, I find, unconscionably exacerbate the existing inequality of the employer/employee relationship. The very act of establishing written policies and procedures creates a presumption that they will be followed. By issuing an employee manual, the employer encourages employees to rely on it and evidences an intent to be bound by it. The manual should be treated as an implied part of the employment contract and held binding on both parties.
Under general contract principles, a contract need not be expressly stated but may be implied by the promissor’s “words or conduct” in light of surrounding circumstances. (Corbin, Contracts [1 vol ed, 1952], §§ 561-572, p 531.) The standard applied is an objective one, i.e., “whether a reasonable man would think the parties intended [the contract]”. (Martin v Campanaro, 156 F2d 127, 129.) Here we have not only words and conduct, but the actual commitment to writing of the employer’s intentions.
By setting personnel procedures down in writing, Big Brothers encourages its employees to rely on them, not only in carrying out their jobs, but also in accepting the jobs in the first instance. Because an employment contract is a bargained for agreement, the existence of the manual means that it may reasonably be taken into account by a prospective employee in choosing among a set of options.
The First Department has, however, rejected this implied contract theory in the context of employee termination proceedings. In Chin v American Tel. & Tel. Co. (96 Misc 2d 1070, affd 70 AD2d 791), the plaintiff asserted that ATT’s “Code of Conduct” stipulated the only grounds upon which his employment could be terminated. The court held that since the contract was not for a specific term it was a contract that was terminable at the will of either party, at any time and for any reason, notwithstanding the guidelines for termination set out in the code.
Similarly, in Edwards v Citibank (100 Misc 2d 59, affd 74 AD2d 553), the court held (74 AD2d, at p 554) that “[t]he issuance of a manual by the employer, setting forth the conditions of employment, which may unilaterally be *848 amended or withdrawn, does not * * * preclude the employer from terminating an employee’s employment except in compliance with the manual.”[3] (Cf. Weiner v McGrawHill, Inc., 83 AD2d 810; Wernham v Moore, 77 AD2d 262.)
Were this a case involving questionable termination of employment, we would be bound to follow the rule enunciated in Chin and in Edwards (supra) and refuse to find that the employee manual constitutes an implied contract with regard to termination procedures.[4] Here, however, the question is whether Ms. Saunders is entitled to benefits set forth in the manual. As sections 197 and 198 of the Labor Law recognize, the equities involved in denying an employee wages or benefits[5] that they have already earned are quite different than those involved in whether and when an employee may be terminated. These sections, which reflect a strong legislative policy aimed at redressing the power imbalance between employer and employee, mandate that, above all, an employee is entitled to collect wages and benefits earned. The importance of this policy is underlined by the Legislature’s decision to make its violation a misdemeanor punishable by a fine, jail, or both.
By enacting section 198, the Legislature clearly intended to grant greater than ordinary protection to the employee’s right to her wages and benefits. In light of this policy, we would find it unconscionable to allow an employer to make a written representation as to the wages or *849 benefits an employee is entitled to, encourage the employee’s reliance and then refuse to be bound by it. The effect of establishing benefit guidelines, as distinguished from termination procedures must necessarily be to bind its author.
Additionally, this case is distinguishable from the termination cases, since here the employment contract itself explicitly incorporates the benefits provisions of the manual. The October 4 letter, which is the writing which constitutes the employment contract in this case, specifically refers Ms. Saunders to the manual for an elaboration of her benefits. The net effect is the same as if the benefits had been outlined one by one in the letter itself. Where the manual is actually incorporated by reference into the employee contract, the employer is bound by its provisions.
CONCLUSION
Accordingly, defendant is directed to pay plaintiff $436.15, the amount agreed by the parties at trial to be due if plaintiff prevailed.[6] Additionally, under section 197 of the Labor Law, Big Brothers shall forfeit $50 to the State, and under section 198 is liable for plaintiff’s reasonable attorney’s fees and $50 for other costs. As the court finds Big Brothers’ failure to pay Ms. Saunders was not willful, no liquidated damages (under section 198) are assessed.

. “Agency manual” refers to the “Code of Personnel Practices and Procedures of Big Brothers, Inc. of NYC”, a document written and authorized by the board of trustees which, by its terms, can be unilaterally modified by them at any time.

. Additionally, the fact that Ms. Saunders was given four weeks’ notice indicates that she was treated as a regular staff member.

. However, in a dissenting opinion, Justice Kupferman pointed out (p 554) that “[t]his voluntary act of issuing these specific representations, upon which an employee may rely to his detriment, may also create a quasi-contractual duty so that the employer is equitably estopped from terminating employment except on the specifically stated grounds.”

. There is a trend, however, in other States not only to treat the employment manual as constituting an implied contract, but to do so even in the context of termination. In Toussaint v Blue Cross & Blue Shield of Mich. (408 Mich 579), the court enforced provisions limiting discharge to just cause based on the employee’s reasonable reliance on the manual containing such provisions. In Cleary v American Airlines (111 Cal App 3d 443), the court implied a covenant of good faith into the employment contract based on the written discharge policies of the employer, and held that the employee could not be dismissed without good cause. (See, generally, Feerick, Labor Relations: Employment-at-Will Rule and Unjust Dismissal, NYLJ, Aug. 6, 1982, p 1, col 1.)

. Subdivision 2 of section 198-c extends legislative protection to cover “benefits or wage supplements”, including “health, welfare and retirement benefits; and vacation, separation or holiday pay.” (Emphasis added.)

. Defendant is not entitled to any offset for unemployment benefits since it failed to establish at trial that plaintiff received unemployment benefits during the two-week period she should have received severance pay.