Ivana GIUNTOLI, Plaintiff,

v.

**GARVIN GUYBUTLER CORPORATION and Steven Tilton, Defendants.**

No. 88 Civ. 1931 (RJW).

United States District Court, S.D. New York.

Dec. 7, 1989.

Kudman & Trachten, New York City (Gary Trachten, of counsel), for plaintiff.

Lord Day & Lord, Barrett Smith, New York City (Brian D. Sullivan, Sean A. Molloy, of counsel), for defendants.

## OPINION

ROBERT J. WARD, District Judge.

Defendants Garvin Guybutler Corporation ("Garvin") and Steven Tilton ("Tilton") move, on various grounds, for partial dismissal of plaintiff's Amended Complaint and Jury Demand (the "Amended Complaint"). Plaintiff Ivana Giuntoli ("Giuntoli") cross-moves for sanctions, pursuant to Rule 11, Fed.R.Civ.P., with respect to the portion of defendants' motion that seeks dismissal of plaintiff's New York State Human Rights claim on grounds of election of remedies. For the reasons that follow, defendants' motion is granted in part and denied in part, and plaintiff's cross-motion is denied.

## BACKGROUND

This case concerns plaintiff's allegations of discriminatory employment practices by

**496**

defendants Garvin and Tilton, her former employer and its president, respectively. The Amended Complaint alleges as follows: Plaintiff was hired by defendant Garvin in February 1982 as a money market broker, with a salary of $65,000 per year plus a semi-annual bonus, based upon the profitability of her department, of at least $15,000. Shortly thereafter, she was put in charge of the "BA's desk," the area within the money market department which brokered mainly bankers' acceptances, and she received an increase in her salary of $10,000 per year. The BA's desk prospered under Giuntoli's direction, and in mid-1984 she received an offer of employment as a money market broker from a competitor of Garvin. In order to induce Giuntoli to remain at Garvin, the company agreed to match the competitor's offer in terms of promised compensation to plaintiff. Relying on Garvin's promise, plaintiff rejected the competitor's offer and continued her employment at Garvin. Accordingly, plaintiff's base salary was increased as promised by Garvin, and she was given the title of Vice President.

At approximately the time that plaintiff received this promotion, the title of Mark Corti ("Corti"), the nominal head of the money market department, was upgraded from Vice President to Senior Vice President. Plaintiff asserts, however, that her responsibilities and job functions were essentially similar to those of Corti, a male: Plaintiff headed the BA's desk within the money market department, and Corti headed the "CD's desk" within that department. According to the Amended Complaint, during the period of Giuntoli's employment Corti expressed discriminatory attitudes and hostility toward female employees of Garvin and in particular toward plaintiff. From time to time during her employment, plaintiff complained to Tilton of discriminatory treatment towards herself and other female employees of Garvin, particularly with respect to the actions of Corti. Corti allegedly was disturbed, because of Giuntoli's gender, by her rise in stature and in compensation to a position near or equal to his own, and there were frequent conflicts between the two employees. These conflicts were often resolved by defendant Tilton, and the respective sexes of Giuntoli and Corti allegedly were a consistent factor in Tilton's resolution of these disputes. Nonetheless, Tilton at times acknowledged to Giuntoli and to other employees that he believed that Corti felt threatened by Giuntoli's advancement, at least in part because of her gender.

In 1986, there arose a dispute between Corti and Giuntoli concerning the allocation of bonus funds between their respective "desks." Giuntoli believed that the bonus monies were being unfairly apportioned, and voiced her concerns to Tilton. Tilton represented to Giuntoli that these inequities were temporary, and would be adjusted by future bonus allocations. In January 1987 this dispute recurred, and plaintiff again objected to Tilton. After directing her to research the problem and to document for him the precise figures about which she complained, Tilton shifted his position and informed plaintiff that he had adjusted the total bonus due her desk upwards from $26,000 to $31,000, and that that figure was final and she could accept it or resign her position at Garvin. She refused to do either, and was thereafter dismissed and discharged from her employment, and forced to leave the premises in a humiliating manner.

Plaintiff did not receive a bonus for the last six months of 1986, nor did she receive any severance pay, although she alleges that Garvin maintains a plan for payment of severance benefits to terminated employees. In addition, plaintiff has not received wages in lieu of her accrued vacation due her at the time she was discharged from Garvin.

Giuntoli charges that defendants engaged in discrimination and retaliation against her because of her sex in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000–e *et seq.* ("Title VII"), and Article 15 of the New York State Human Rights Law, N.Y. Exec.Law § 290 *et seq.* (McKinney 1982 & Supp.1989) ("HRL"). Giuntoli further contends that defendants through their conduct violated her rights as a beneficiary

under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA"). Finally, Giuntoli asserts claims against Garvin for breach of express and implied contract and for violations of N.Y.Lab.Law, § 190 *et seq.* (McKinney 1986 & Supp.1989).

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in February 1987. The EEOC, in accordance with a work sharing agreement between it and state and local authorities, deferred plaintiff's charge to the State Division of Human Rights ("SDHR").[1] SDHR, however, conducted little or no investigation of plaintiff's claim, and on June 27, 1989, the SDHR dismissed plaintiff's complaint on grounds of administrative convenience.

Defendants move to dismiss several portions of the Amended Complaint.[2] Tilton contends that he is not a proper defendant under plaintiff's Title VII claim, and that he is not an employer within the meaning of the New York State Human Rights Law. Defendants further argue that the New York State Human Rights claim must be dismissed in its entirety, since plaintiff elected an administrative remedy under that law, and that plaintiff's implied contract claim fails to state a claim upon which relief may be granted. In addition, defendants assert that plaintiff's claim under New York Labor Law § 190 should be limited to the severance and vacation pay allegedly due her, and finally that punitive damages should not be allowed under either ERISA or the New York State Human Rights Law.

## DISCUSSION

On a motion to dismiss, the Court must read the complaint generously, drawing all reasonable inferences in favor of the plaintiff. *Pross v. Katz,* 784 F.2d 455, 457 (2d Cir.1986); *Dwyer v. Regan,* 777 F.2d 825, 829 (2d Cir.1985). Plaintiff's well-pleaded allegations must be accepted by the Court as true. *E.g. Jacobson v. Cooper,* 882 F.2d 717, 718 (2d Cir.1989). A claim should be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Stone v. Chung Pei Chemical Industry Co. Ltd.,* 790 F.2d 20, 22 (2d Cir. 1986). It is with these principles in mind that the Court turns to defendants' motion.

### 1. *The Title VII Claim Against Tilton*

■ As a general rule, one not named as a respondent in an EEOC charge may not be sued individually in a later Title VII action. *E.g. Alcena v. Raine,* 692 F.Supp. 261, 269 (S.D.N.Y.1988); 42 U.S.C. § 2000e–5(f)(1) ("§ 2000e–5(f)(1)") (complainant may, within 90 days of receiving notice from EEOC of right to sue, bring a civil action "against the respondent named in the charge"). "The purpose of this requirement is to notify the charged party of the alleged violation and to bring him before the EEOC, thereby permitting 'effectuation of the Act's primary goal, the securing of voluntary compliance with the law.'" *Koster v. Chase Manhattan Bank,* 554 F.Supp. 285, 289 (S.D.N.Y.1983) (quoting *Bowe v. Colgate–Palmolive Co.,* 416 F.2d 711, 719 (7th Cir.1969)). Defendants contend that plaintiff's Title VII claim against Tilton must be dismissed, because Tilton was not named as a respondent in

---

**1.** 42 U.S.C. § 2000e–5(c) provides that the EEOC may not accept a charge for filing until "the expiration of sixty days after proceedings have been commenced under the state or local law...." Thus, under a work sharing agreement with state and local authorities, the EEOC files the charge as an SDHR complaint, SDHR conducts the initial investigation, and the EEOC accords substantial weight to SDHR findings. *See* 29 C.F.R. § 1601.13 (1987).

**2.** Originally, defendants had moved for dismissal of the entire Amended Complaint. However, after reviewing certain documents submitted *ex parte* to the Court, and after discussions with the Court and opposing counsel, defendants amended their motion by withdrawing that portion seeking dismissal of the Amended Complaint due to plaintiff's failure to comply with Rule 4(j), Fed.R.Civ.P. Defendants further amended the instant motion by withdrawing that portion which sought dismissal of plaintiff's express contract claim, pending further discovery on that issue.

the EEOC charge filed by plaintiff, nor was he mentioned by name in the body of the charge.

■ Courts have, however, carved out an exception to the general rule in cases where allowing the unnamed individual to be sued under Title VII does not contravene the purposes of the procedural requirement of § 2000e–5(f)(1). Thus, an exception has been made where there is a "substantial identity" between the party named in the EEOC charge and the person sought to be included in the Title VII action, and the latter was aware of the EEOC proceeding. *Rio v. Presbyterian Hospital in the City of New York,* 561 F.Supp. 325, 326 (S.D.N.Y.1983) (ADEA case); *Vulcan Soc. of Westchester Cty. v. Fire Dep't of White Plains,* 82 F.R.D. 379, 389 (S.D.N.Y. 1979): *Allen v. Colgate–Palmolive Co.,* 539 F.Supp. 57, 69 (S.D.N.Y.1981) (same). *See also Travers v. Corning Glass Works,* 76 F.R.D. 431, 433 (S.D.N.Y.1977) (individual not named in EEOC charge did not have notice of personal liability, and could not be included in civil suit).

Defendants point to the *Travers* opinion, as well as to a recent case in which it was cited, *see Richter v. Buffalo Municipal Housing Authority,* 49 Fair Empl.Prac. Cas. (BNA) 674, 1989 WL 24513 (W.D.N.Y. 1989),[3] for the proposition that "it is only notice of a defendant's individual potential liability, and the ability to resolve that liability through the conciliation process which provides a basis" for an exception to the general rule. Defendants' Memorandum of Law in Support of Their Motion to Dismiss Plaintiff's Amended Complaint and Jury Demand at 15. Thus, defendants state that there exists a split of authority in this district with regard to the proper

standard for exception from the general statutory requirement, and asserts that the *Travers* rule is the better one.

This Court is of the opinion, however, that this so-called "split of authority" is more illusory than real with respect to the applicable standard in cases such as the instant one. The difference in result between the *Travers* and *Richter* cases on the one hand, and the several cases allowing individual defendants not named in an EEOC charge to be sued in a corresponding federal case on the other, are attributable more to the specific facts of each case and to the particular court's application of the standard than to a different standard altogether. It cannot fairly be said that *Travers* turned on notice of individual liability, while the other cases disregarded this consideration.

In *Travers,* the court dismissed the plaintiff's Title VII claim against his supervisor, who had not been named as a respondent in the EEOC charge but had been mentioned in the body of the charge as the individual from whose conduct the charges against the company flowed. In declining to invoke the exception to the strict statutory requirement of Title VII, the court was strongly influenced by its finding that "[t]he Commission's efforts to conciliate the charges were directed to [the company] and not to [the individual supervisor]—indeed, it is uncontroverted that neither state nor federal conciliation attempts involved any of the individual defendants." *Travers v. Corning Glass Works,* 76 F.R.D. 431, 433 (S.D.N.Y.1977). Thus, in *Travers,* the second prong of the test—actual notice of the charge—was not satisfied and the court

---

**3.** Although, as defendants correctly point out, the court in *Richter* did cite and quote the *Travers* opinion, it is not at all clear to this Court that there exists, as defendants suggest, a "*Travers, Richter* rule" defining the proper scope of the exception to the requirement of § 2000e–5(f)(1). The court in *Richter* also quoted cases contrary to *Travers,* setting out a four factor test to be applied, and noted that these "courts have taken a different view" than that of the *Travers* court. *Richter v. Buffalo Housing Authority,* 49 Fair Empl.Pract.Cas. (BNA) 674, 675 (W.D.N.Y.1989). The court then proceeded

to apply the four-factor test, and determined that it did not apply to provide an exception in that case. In a footnote, however, the court stated that, since that test had proved unavailing to the plaintiffs, the court "[took] no position on the issue as to whether such should ever weigh in favor of absolving a plaintiff from failing to name and thereby give notice to a defendant in a predicate EEOC proceeding." *Id.,* 49 Fair Empl.Pract.Cas. (BNA) at 676 n. 3. In light of this statement by the court, it is unclear what, if any, weight should be accorded the holding in that case.

accordingly found that the exception did not apply.

In *Richter*, also relied upon by defendants, the plaintiffs sought to amend their complaint in a Title VII case to include their former labor union and its officers. These proposed defendants had not been named in the EEOC charge, nor had they had any notice of alleged conduct by them which might form the basis of a Title VII claim. The union was neither "substantially identical" to the named defendant, nor did it have notice of, or an opportunity to participate in, the conciliation process. Under these circumstances, it is clear that the exception to the statutory requirement, however formulated, did not apply to allow the union to be brought into the federal lawsuit, and such was the finding of the district court in that case.

■ In light of the competing goals at issue in cases such as the one presented here, as recognized by the courts which have attempted to formulate an appropriate exception to the strict statutory requirement contained in § 2000e–5(f)(1), it is the opinion of this Court that the most helpful formulation is the one enunciated by Judge Haight in *Allen v. Colgate–Palmolive, supra*, 539 F.Supp. at 69. The court in *Allen* outlined the following test: "if notice of intent to sue is given to their corporate employer, but not to them, the individual defendants may nevertheless be included in the complaint if they had actual notice that their individual conduct was being investigated." *Id. See also Rio v.*

*Presbyterian Hospital in the City of New York*, 561 F.Supp. 325, 326 (S.D.N.Y.1983) (citing this language from *Allen*).

This formulation is particularly helpful for several reasons. First, focusing on the individual conduct of the potential defendants is more precise than attempting to discern whether they had notice of potential individual liability. In addition, the proposed test highlights the question of notice, the key issue in terms of furthering the purpose of the statutory requirement, and further makes clear exactly of what the individual need have been notified. Finally, the general goals of the statute are served since the exception allows individual defendants a reasonable opportunity to resolve claims through voluntary conciliation, while at the same time encouraging full redress of grievances by not focusing unduly on procedural technicalities in a statutory scheme often effectuated in the first instance by inexperienced laymen. *See Travers, supra*, 76 F.R.D. at 433 n. 7.

■ Under this test, where the alleged discrimination has been brought about at least in part through the conduct of an unnamed individual, and that individual has actual notice that this discrimination was the subject of an administrative complaint,[4] a plaintiff should be permitted to sue that individual in federal court under Title VII.

Here, Tilton is alleged to have been, at all times relevant to the instant lawsuit, the President of Garvin. In addition, it is in large part through the actions of Tilton

**4.** Some courts have also looked to the question of prejudice to the individual unnamed defendant, reasoning that where, as here, little or no investigation was carried out by the administrative agency, the lack of notice is less significant. *See e.g., Koster v. Chase Manhattan Bank*, 554 F.Supp. 285, 289 (S.D.N.Y.1983). Defendants argue, in response, that because Tilton was not named in the EEOC charge, it is impossible to know whether he would have more actively pursued voluntary conciliation had he in fact been aware that he might be individually liable for his conduct. While this argument has some superficial appeal, on closer examination it is untenable in its implications. First, a rule so formulated would, in a case in which no administrative investigation had occurred, effectively wipe out the exception even in cases in which the individual had notice that his conduct was

the subject of an administrative complaint against the company at which he worked. More importantly, the incentives created by such a rule would be directly counter to the main purpose of § 2000e–5(f)(1) of encouraging voluntary conciliation prior to resort to the federal courts. An officer of a corporate respondent before the EEOC in such a case would have the perverse incentive to avoid conciliation in order to prevent being personally liable in a subsequent civil suit. Yet where it is shown that there was no notice at all on the part of the individual, the argument is more persuasive and the counterproductive incentives do not exist. For these reasons, it makes more sense to focus upon the question of actual notice than upon that of prejudice to the individual and the extent of the administrative investigation.

that the alleged discriminatory conduct occurred. Although the EEOC charge does not mention Tilton by name, it states, in part, that "Garvin GuyButler Corporation terminated Ms. Giuntoli in January, 1987 due solely to her sex." Exh. A to Defendants' Memorandum of Law in Support of Their Motion to Dismiss Plaintiff's Amended Complaint and Jury Demand, filed June 2, 1989. The Amended Complaint alleges that it was Tilton who terminated plaintiff's employment after she refused to resign at his insistence. Any investigation by the state or federal administrative agencies presumably would have included investigation of Tilton's individual conduct.

Thus, the crucial question remaining is whether Tilton had actual notice that a charge regarding these actions had been filed by Giuntoli with the EEOC. As plaintiff notes, defendants have remained silent on this issue. It seems likely that, as President of Garvin, Tilton would have been aware of the investigation, and an inference to that effect is entirely reasonable. In any case, with this factual issue unanswered, and drawing all reasonable inferences in favor of plaintiff, it would be inappropriate to dismiss the claim against Tilton at this stage in the proceedings. *See, e.g., Rio v. Presbyterian Hospital in the City of New York, supra,* 561 F.Supp. at 326. Thus, the Court declines to dismiss plaintiff's Title VII claim against Tilton.

### 2. *The New York State Human Rights Claim*

Plaintiff has asserted, in addition to her Title VII claim, a pendant state law claim under the New York State Human Rights Law. Defendants argue that this claim must be dismissed because plaintiff has elected an administrative remedy under New York Executive Law § 297(9).[5] Plain-

tiff counters that the election of remedies provision is not applicable to this case for two reasons. First, she contends that, because her administrative complaint was automatically referred to the SDHR by the EEOC pursuant to a work sharing agreement between the two agencies, she did not make a meaningful election of state remedies under the statute. In addition, plaintiff argues that, since her complaint which was formerly pending before the State Division of Human Rights ("SDHR") has been dismissed on the grounds of administrative convenience, it falls under the statutory exception to the election of remedies provision. The Court addresses each of these arguments in turn and then, because it finds that the HRL claim should not be dismissed, turns to Tilton's contention that he is not an employer within the meaning of the HRL.

a. Election of remedies under § 297(9)—

Several courts, both state and federal, have recently acknowledged and attempted to make sense out of the uneasy relationship between the procedural requirements of Title VII and the election of remedies provision of the New York State Human Rights Law. That provision, as noted above, requires one claiming a violation of the state law to elect to proceed either in an administrative or a judicial forum. Where the administrative route is initially chosen, it must thereafter be exclusively traveled.[6] Because filing a complaint with the EEOC is a jurisdictional prerequisite to the maintenance of a suit under Title VII, and because the EEOC may not consider a claim in a "deferral" jurisdiction, such as New York, until it has been pending with a state agency for 60 days, the confluence of

**5.** Section 297(9) provides, in relevant part:
Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages and such other remedies as may be appropriate, unless such person had filed a complaint hereunder or with any local commission on human rights, or with the superintendent pursuant to the provisions of section two hundred ninety-six-a of

this chapter, provided that, where the division has dismissed such complaint on the grounds of administrative convenience, such person shall maintain all rights to bring suit as if no complaint had been filed."

**6.** A single exception is provided in cases where the agency dismisses the complaint of the grounds of "administrative convenience." This exception is discussed below.

the state and federal schemes, read literally, causes the "anomalous" result that "a plaintiff who brings [a Title VII] claim in federal court cannot bring a New York State claim in either state or federal court." *Hunnewell v. Manufacturers Hanover Trust*, 628 F.Supp. 759, 761 (S.D.N.Y.1986). Such a plaintiff, in order to pursue a state claim, would be forced to proceed in the state agency and federal court concurrently.

Where a plaintiff originally files her charge with a state administrative agency, and thereafter institutes a federal Title VII lawsuit, several courts in this district have held that the election of remedies provision prevents them from entertaining a pendant state human rights law claim. *See, e.g., Hunnewell v. Manufacturers Hanover Trust, supra,* 628 F.Supp. 759 (S.D.N.Y. 1986); *Klotsche v. New York City,* 621 F.Supp. 1113 (S.D.N.Y.1985); *Koster v. Chase Manhattan Bank,* 609 F.Supp. 1191 (S.D.N.Y.1985); *Collins v. Manufacturers Hanover Trust,* 542 F.Supp. 663 (S.D.N.Y. 1982); *Marin v. New York State Dep't of Labor,* 512 F.Supp. 353 (S.D.N.Y.1981). In such a case, the plaintiff has clearly made an election of an administrative forum with respect to her state claim, and thus could not bring that claim in state court.

However, where a claim originally is filed with the EEOC, and then automatically is referred by the EEOC to the state administrative agency, some courts have held that the election of remedies provision does not apply, reasoning that "the required reference to the S.D.H.R. by the E.E.O.C. is not an election by the individual plaintiff." *Gibson v. American Broadcasting Companies, Inc.,* 49 Fair Empl. Prac.Cas. (BNA) 1506, 1986 WL 10290 (S.D. N.Y.1986). In such cases, it may be said that no meaningful election has occurred, since the plaintiff herself has not chosen to file with the state agency.

Although several federal district courts have employed this rationale in order to allow Title VII plaintiffs to have both their state and federal claims heard in a single forum, *see id.; O'Brien v. King World Productions, Inc.,* 669 F.Supp. 639, 640 (S.D.N.Y.1987); *Kaczor v. City of Buffalo,* 657 F.Supp. 441, 446–48 (W.D.N.Y.1987); *Selbst v. Touche Ross & Co.,* 587 F.Supp. 1015, 1016–1017 (S.D.N.Y.1984); *New York v. Holiday Inns, Inc.,* 656 F.Supp. 675, 682–83 (W.D.N.Y.1984), a recent opinion in the New York Appellate Division casts substantial doubt upon the viability of this approach under New York law. In *Scott v. Carter–Wallace,* 541 N.Y.S.2d 780, 147 A.D.2d 33 (App.Div.1989), the First Department held that an individual who files a charge of discrimination with the EEOC, which in turn defers the complaint to the SDHR, is barred from bringing an action in state court under the New York Human Rights Law. In other words, the EEOC's referral of the claim acts as an effective election of remedies under Executive Law § 297(9).

In so holding, the First Department overruled and reversed, respectively, *Rodriguez v. B. Altman & Co.,* 47 Fair Empl. Pract.Cas. (BNA) 781 (N.Y.Sup.Ct.1984), and *Scott v. Carter–Wallace,* 511 N.Y.S.2d 767, 134 Misc.2d 458, *on reargument,* 521 N.Y.S.2d 614, 137 Misc.2d 672 (Sup.Ct. 1987), *rev'd,* 541 N.Y.S.2d 780, 147 A.D.2d 33 (App.Div.1989), the only state court decisions theretofore addressing the issue. The courts in those cases had interpreted the language of § 297(9) to state that an election of remedies occurs only where the claimant *personally* files an action with the state agency. Thus, where the complaint is referred to the SDHR by the EEOC pursuant to those agencies' internal procedures, the plaintiff is not barred from bringing a subsequent action in state court. The *Carter–Wallace* court, flatly rejecting this interpretation of § 297(9), refused to distinguish *Rodriguez* on the basis of the plaintiff's acquiescence in, or repudiation, of the administrative proceeding in a given case.[7] Instead, the court noted that "when

---

**7.** The court stated:

we note, but find it unnecessary to address, defendant's argument that, assuming plaintiff did not make an election under Executive

Law 297(9), she nevertheless "ratified" the EEOC's referral of her charge to the State Division by permitting the proceedings there to pend for ten months before withdrawing

the EEOC refers a complaint to the State Division ... [it] is effectively acting as the grievant's agent." *Scott v. Carter-Wallace, supra,* 541 N.Y.S.2d at 782.

Yet the decision in *Carter-Wallace* was premised in large part on the unfairness of basing access to *state* court on the often fortuitous circumstance of a plaintiff's failure to follow the letter of Title VII and thus to have his claim referred to the SDHR by the EEOC rather than first filing it there himself. Thus, the court stated that:

> to distinguish between grievants on the basis of which agency they happen to file with would be to put a grievant who, desirous of pursuing his Title VII remedies and astute to the literal requirements of that statute, deliberately files with the State Division in a worse position than an unastute grievant who, oblivious to the availability of judicial relief in any forum but desirous of vindicating his right not to be discriminated against, by chance files with the EEOC through sheer good luck.

*Id.* The court was clearly concerned about a situation where this "unastute" grievant, for no good reason, would derive the benefit of being able, "should matters not go well for him in the State Division, [to withdraw] from that agency and commence an alternative proceeding in state court," as the plaintiff in *Carter-Wallace* indeed had done. *Id.* Such a result would directly contravene the purposes of the election of remedies provision by permitting an individual to proceed in both state forums.

This conclusion appears sound in light of the state policies which the election of remedies provision is intended to implement, but its logic does not necessarily apply in cases where a plaintiff seeks to have her state law claim heard not in state court, but in federal court. Indeed, the *Carter-Wallace* opinion recognizes this distinction:

a grievant who files with the EEOC effectively elects, whether he realizes it or not, a federal judicial forum, and it is to that forum that the grievant should look for his remedies, *including any state law remedies provided by the Human Rights Law.* This accords with common sense—it is to be expected that when a grievance is taken to a federal agency, such as the EEOC, ultimate responsibility for its redress will be with a federal court.

*Id.* (emphasis added). Thus, the court recognized that the state election of remedies goals would not be hindered, and in fact could conceivably be furthered, by redress of the state law claims in federal court.[8]

The legislative intent behind § 297(9) was to allow grievants to choose between an administrative and a judicial forum. *See* 1968 N.Y.Laws 2321 (McKinney). The legislature sought, through that section, to add a right of action by allowing grievants to seek redress of unlawful discrimination in the courts. Yet in limiting grievants to their initial choice, the legislature was clearly concerned with efficiency and avoidance of duplicative and unnecessary procedures. Thus, where a grievant elected to have his claim heard in an administrative forum, judicial review of agency determinations was carefully delineated.

The federal purpose, on the other hand, of requiring deferral of claims in jurisdictions in which the state has provided an administrative process is to allow the state an opportunity to resolve claims in a localized and voluntary manner. Section 2000e-5(c) "is intended to give state agencies a limited opportunity to resolve problems of employment discrimination and thereby to make unnecessary, resort to federal relief by victims of the discrimination." *Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 755, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609 (1979). Title VII, in deferring to state administra-

therefrom and turning to court. In contrast, the grievant in *Rodriguez* repudiated the referral only two weeks after it was made, before any significant activity had been undertaken in the State Division.
*Scott v. Carter-Wallace, supra,* 541 N.Y.S.2d at 782.

8. The court went on to state: "[w]hat effect this ruling might have on a federal court's decision to exercise pendant jurisdiction over a Human Rights Law claims [sic] we cannot say." *Id.*

tive procedures, did not contemplate a situation in which the state grants the litigant a choice of forums. In effect, New York has given grievants the option of pursuing their state law claims as if no state agency existed. The EEOC, however, is forced to act in all cases as if the state agency does exist and has the primary responsibility for acting upon state law claims. Section 2000e–5(c) seeks to further state remedial procedures, not to circumscribe them. Yet if the Court refuses, because of this deferral provision, to allow plaintiff to pursue her state remedies in a judicial forum it will do not only that, but it will also frustrate efficiency goals and require duplicative proceedings in the state agency. Such a result would comport with neither state goals, federal goals, nor reason.

Recognizing that the *Carter–Wallace* result might make sense with respect to state court proceedings, but not with respect to a federal court's exercise of pendant jurisdiction, is perfectly consistent with the principles underlying the exercise by a federal court of pendant jurisdiction over state law claims. As the Supreme Court stated in the seminal case of *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966), a federal court has a broadly-defined power to hear a pendent claim. That power:

> exists whenever there is a claim "arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their authority" . . . and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional "case."

*Id.* Where the state and federal claims "derive from a common nucleus of operative fact," a federal court may entertain the state claim. *Id.*

The Supreme Court, while very broadly defining this power, distinguished between it and a federal court's discretion whether to employ that power. A number of factors were enumerated in order to guide federal courts in exercising their discretion, including "considerations of judicial economy, convenience and fairness to litigants." *Id.* at 726, 86 S.Ct. at 1139. All of these factors counsel in favor of this Court's exercise of pendent jurisdiction in the instant case.

An additional consideration, of particular relevance to the analysis undertaken here, is an analogous situation that has occurred in some jurisdictions with respect to state statutes of limitations. In applying the above factors, "courts have thought it a relevant consideration, though not determinative, that the state claims would be barred by the statute of limitations if they were dismissed by the federal court." C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3567.1, at 127–132 (1984). *See, e.g., L.A. Draper & Son v. Wheelabrator–Frye, Inc.,* 735 F.2d 414, 430 (11th Cir.1984); *Pharo v. Smith,* 625 F.2d 1226, 1227 (5th Cir.1980); *O'Brien v. Continental Illinois National Bank & Trust Co.,* 593 F.2d 54, 65 (7th Cir.1979). In such cases, courts reason that where "a plaintiff has pursued his federal claim in good faith and with diligence, his pendent claim should not be foreclosed by the passage of the time required to dispose of the federal claim." *O'Brien v. Continental Illinois National Bank & Trust, supra,* 593 F.2d at 65. Thus, the fact that the state claim would be barred from state court is viewed as a strong reason to allow that claim to be heard in federal court.

■ This rationale applies with equal force to the instant situation. Here, as in the above-cited cases, the plaintiff is barred from litigating an otherwise available state court action solely because of her good faith pursuance of a federal claim. Had she never filed her federal claim, she would retain the option afforded her by the New York legislature to pursue her state remedies in a judicial forum. That this option is lost to her for no reason other than her desire to pursue her federal remedies as well weighs in favor of this Court's exercise of pendent jurisdiction over the state claim. This factor, as well as the aforementioned reasons of efficiency, economy, and fairness lead this Court to exercise its

**504**

discretionary power to entertain the pendant state law claim.

b. **The administrative convenience dismissal—**

■ During the pendency of defendants' motion, the SDHR dismissed plaintiff's claim on the grounds of administrative convenience. Under § 297(9), a dismissal for this reason is the single exception to the election of remedies bar. Here, however, it is undisputed that the administrative convenience dismissal was suggested by plaintiff. Thus, defendants insist that it in fact constituted a voluntary withdrawal of her claim, and was not a true administrative convenience dismissal within the meaning of § 297(9). Because the Court finds that the dismissal is valid, and in any case should have been challenged by defendants through the prescribed state procedure, the exception to the election of remedies provision must be invoked. Therefore, even were *Carter–Wallace* to be understood to apply to federal exercise of pendant jurisdiction, it would not be applicable in the instant case.

On June 27, 1989, plaintiff's complaint was "ordered dismissed on grounds of administrative convenience" by the SDHR. The order of dismissal was expressly based upon the SDHR's finding that "[p]rocessing the complaint will not advance the state's human rights goals." Affirmation of G. Trachten, filed July 18, 1989, exh. A. Defendants argue that this dismissal, requested by plaintiff, is indistinguishable from a voluntary withdrawal which would not fall under the exception to the election of remedies provision. Plaintiff contends that defendants' challenge to the decision of the SDHR is not subject to collateral attack, but must be brought pursuant to § 298 of the HRL.[9]

Defendants do not deny that the SDHR's order is not appealable in this Court. They expressly state that they "do not seek to reopen or invalidate the SDHR Order." Defendants' Response Memorandum of Law in Opposition to the Plaintiff's Cross–Motion for Sanctions, filed October 5, 1989, at 7. Instead,

> Defendants [ask] this Court to construe the election of remedies exception contained in N.Y.Exec.Law § 297(9) to exclude any administrative convenience dismissal which is initiated by the complainant and entered with the express consent of the complainant.

*Id.* at 2. It is defendants' contention that the New York legislature did not intend the exception contained in § 297(9) to encompass this type of dismissal.

The Court first notes that defendants' assertion that they do not seek to invalidate the SDHR's order, while logically maintainable, is unpersuasive. The significance in the New York statutory scheme of a dismissal on the grounds of administrative convenience is precisely that such a dismissal provides the sole basis for an exception to the election of remedies provision of § 297(9). Thus, it would be meaningless to hold that the SDHR's administrative convenience dismissal is valid, yet that it does not satisfy § 297(9). The basis of the dismissal would then have no significance at all and would be equivalent to a withdrawal of the complaint. Clearly, the SDHR made an explicit decision to grant a dismissal on the grounds of administrative convenience. In fact, it is precisely this determination that defendants challenge.

The Court finds that, even were this challenge to the SDHR's order properly before it, the administrative convenience dismissal is valid, and provides a proper basis for an exception to the election of remedies provision. It is well-settled that "[t]he scope of judicial review of a decision by SDHR to dismiss for administrative convenience is limited to whether the determination was

---

**9.** Section 298 provides, in pertinent part:

Any complainant, respondent or other person aggrieved by an order of the commissioner which is ... an order dismissing a complaint ... may obtain judicial review thereof, ... in a proceeding as provided by this section. Such proceeding shall be brought in the supreme court in the county wherein the unlawful discriminatory practice which is the subject of the order occurs....

That section further provides that "[t]he jurisdiction of the courts over these proceedings, as provided for herein, shall be exclusive," and that the SDHR may appear in any such proceeding.

purely arbitrary." *Marine Midland Bank v. New York State Division of Human Rights,* 534 N.Y.S.2d 608, 609, 144 A.D.2d 924 (App.Div.1988), *appeal granted,* 545 N.Y.S.2d 103, 74 N.Y.2d 607, 543 N.E.2d 746 (1989); *Pan American World Airways, Inc. v. New York State Human Rights Appeal Board,* 475 N.Y.S.2d 256, 258, 61 N.Y.2d 542, 463 N.E.2d 597, 599 (1984). *See also In re State Division of Human Rights ex rel. Granelle,* 517 N.Y. S.2d 715, 717, 70 N.Y.2d 100, 510 N.E.2d 799, 801 (1987) (scope of judicial review under HRL is extremely narrow and is confined to whether determination is supported by substantial evidence). A decision will be considered purely arbitrary if it "[contravenes] statutes or constitutional provisions, [countenances] their contravention, or [violates] SDHR's own regulations." *Marine Midland Bank v. New York State Division of Human Rights, supra,* 534 N.Y.S.2d at 609.

In *Marine Midland,* the Fourth Department refused to invalidate an administrative convenience dismissal notwithstanding the fact that it was, as in this case, requested by the complainant. Although the SDHR had conceded that its order was intended to "give [the complainant] a forum in which to litigate his claim under the Human Rights Law," the court there found that "neither Executive Law § 297(9) nor the applicable SDHR regulations (9 NYCRR 465.5[d]) was violated" by the dismissal. *Id.* Similarly, in *Miller v. International Telephone & Telegraph Corp.,* 545 N.Y.S.2d 732 (App.Div.1989), the Second Department declined to disturb an SDHR order of dismissal for administrative convenience although it was expressly "premised on that ground so as to permit the plaintiff to pursue a remedy in the State courts." *Id.* at 733. The court stated:

> Assuming, *arguendo,* that the defendant may collaterally attack the SDHR's determination, we find that, contrary to the defendant's contentions, the dismissal

was not beyond the scope of the SDHR's authority....

*Id.* at 734. *See also Eastern Airlines, Inc. v. State Human Rights Appeal Board,* 413 N.Y.S.2d 925, 66 A.D.2d 581 (App.Div.1979) (suggesting that request by complainant for administrative convenience dismissal does not render such dismissal invalid for purposes of § 297(9)).

Most recently, in *Eastman Chemical Products, Inc. v. New York State Division of Human Rights,* N.Y.L.J., November 30, 1989, at 23, col. 2, a state court presented with an appeal, pursuant to § 298, of an SDHR administrative convenience dismissal under circumstances nearly identical to those before this Court upheld the SDHR's order, finding that it "did not act 'purely arbitrarily' in issuing administrative convenience dismissals, so that the individual respondents could pursue their Human Rights Law remedies in federal court." *Id.* In *Eastman Chemical,* as here, charges were filed with the EEOC and with the SDHR in order to satisfy the requirements of the ADEA. A suit was thereafter commenced in federal court charging defendant with violations of both the ADEA and the New York HRL. Defendant moved to dismiss the state claim, arguing that it was barred by § 297(9). Plaintiffs asserted that the SDHR had, *at their request,* dismissed their complaints on the grounds of administrative convenience, and therefore the exception to the election of remedies provision applied.[10]

The court found compelling the SDHR's argument that the election of remedies provision, including the exception thereto,

> enables the Division to '... restore to complainants the choice the legislature intended them to have by issuing administrative convenience dismissals.'

*Id.* The court noted that the Rules of Practice of the SDHR "provide a list of grounds for dismissal of a complaint for administrative convenience; that list is illustrative and includes the ground that 'processing the complaint will not advance

---

**10.** Defendant contended, as do defendants in the instant action, that the administrative convenience dismissal did not comport with § 297(3)(c) of the HRL, which pertains to dismissals for administrative convenience. The state court found this argument unpersuasive.

the State's human rights goals.' (9 NYCRR § 465.5(d)(2)(v))." *Id.*[11] That is the identical ground advanced by the SDHR in the instant case.

In sum, the Court finds this recent state court decision, which is factually indistinguishable from the case presented here, persuasive. Based upon it and the other state court cases cited herein, even were this Court to review the determination of the SDHR, it would find that it was not purely arbitrary. In addition, granting that defendants do not ask the Court to invalidate the SDHR order, but only to construe § 297(9), the Court finds the *Eastman Chemical* decision persuasive authority for the proposition that § 297(9) indeed contemplates such an action by the SDHR designed to preserve a complainant's election of remedies. Accordingly, the Court finds that the New York HRL claim should not be dismissed. However, the arguments advanced by defendants with respect to this difficult issue were neither unreasonable nor groundless, and thus plaintiff's cross-motion for sanctions is denied.

c. The definition of "employer" under the HRL—

Defendants rely on *Patrowich v. Chemical Bank,* 483 N.Y.S.2d 659, 63 N.Y.2d 541, 473 N.E.2d 11 (Ct. of App.1984) in support of their contention that Tilton should not be considered an employer under § 296(1)(a) of the HRL. They argue that both plaintiff, and the lower court decisions interpreting *Patrowich* which she cites, have misconstrued the holding in that case, thus incorrectly broadening its definition of employer under the HRL. The Court disagrees and finds that the question whether Tilton is an employer under the HRL must await further development of the evidence in this case.

The opinion in *Patrowich* is ambiguous as to the precise nature of its holding with respect to the HRL. On careful reading,

however, it does not support defendants' suggestion that the "economic reality" test held by the New York Court of Appeals in *Patrowich* to apply to the federal claims under the Equal Pay Act and the ADEA was not held applicable to HRL claims. On the contrary, the New York Court of Appeals appears in that case to apply the economic reality test to all of the claims advanced, and to dismiss claims against plaintiff's supervisor based upon application of that test.

The lower court cases interpreting *Patrowich* have so assumed or held, and have thus found that, under the HRL, a suit against an individual should be dismissed where he or she "has not been shown to have any ownership interest or power to do more than carry out personnel decisions made by others"—the so-called "economic reality" test. *Lapidus v. New York City Chapter of the New York State Assoc. for Retarded Children, Inc.,* 504 N.Y.S.2d 629, 634, 118 A.D.2d 122 (1986) (quoting *Patrowich* ); *Monsanto v. Electronic Data Systems Corp.,* 529 N.Y.S.2d 512, 514, 141 A.D.2d 514 (1988) (same); *Samper v. University of Rochester Strong Memorial Hosp.,* 528 N.Y.S.2d 958, 961, 139 Misc.2d 580 (Sup.Ct.1987) ("an individual needs to have the power to carry out personnel decisions in order to be considered an employer under the Human Rights Law") (citing *Patrowich* ).

The narrow holding of *Patrowich* is clear:

[a] corporate employee, though he has a title as an officer and is the manager or supervisor of a corporate division, is not individually subject to suit with respect to discrimination based on age or sex under New York's [HRL] or its Labor Law (§ 194) or under the Federal [ADEA] or Equal Pay Act (29 U.S.C. § 206, subd. [d]) if he is not shown to have any ownership interest or any pow-

---

11. In addition, the court found that the decision in *Carter–Wallace, supra,* cited by defendant in that case, did not require a finding that the dismissals were purely arbitrary. The court noted that that case had pertained to proceedings sought to be commenced in *state* court. It

further cited the language of the First Department, suggesting that filing with the EEOC constituted an election of a federal judicial forum for both federal and state law claims, in support of its holding finding the dismissal valid.

er to do more than carry out personnel decisions made by others. *Patrowich v. Chemical Bank, supra,* 483 N.Y.S.2d at 660, 473 N.E.2d at 12. The court, however, proceeding to discuss each of the enumerated statutes in turn, creates some ambiguity as to the nature of its holding. Discussing the HRL, it appears to state that "individual employees" cannot be sued under that statute. Similarly, under article six of the New York Labor Law, the court finds that corporate officers are not subject to civil liability.

The court then turns to the federal statutes, and states, as defendants point out, that the "question is a closer one under" those statutes. It goes on to find that "the weight of Federal authority is that 'economic reality' governs who may be sued" under the federal statutes at issue. *Id.* at 661, 473 N.E.2d at 13. Defendants appear to interpret this language to imply that the standards under the federal and state laws are different, and that the economic reality test applies only to the former. However, this Court is of the opinion that, in distinguishing between the state and federal questions in the case, the New York Court of Appeals was suggesting that the "question is a closer one" whether an *individual employee,* who is merely an agent of the employer, may be sued under the statutes at issue.[12] It followed federal cases holding that a mere agent or one acting in the interest of an employer could not be sued under those statutes.

■ The court thus appears to have adopted this more stringent test of economic reality in both the federal and state law contexts, although the language of the federal statutes made the question there a closer one. Accordingly, plaintiffs must be given an opportunity to demonstrate that Tilton is indeed an employer within the meaning of the HRL by a factual showing that he had some ownership interest in Garvin, or that he had the power to do more than simply carry out personnel decisions. Because the Court cannot determine as a matter of law that Tilton is not an employer under the HRL, it must deny defendants' motion to dismiss this claim as to Tilton.

### 3. *Plaintiff's Fifth Cause of Action*

In her fifth cause of action, against defendant Garvin only, plaintiff alleges that Garvin breached an employment contract with her by refusing to pay her bonus compensation for the latter six months of 1986, vacation pay allegedly due her, and severance pay. She claims that she is contractually entitled to such compensation under "the terms and conditions applicable to [her] employment." Amended Complaint at 15, ¶ 106. Defendants argue that this cause of action must be dismissed for failure to state a claim upon which relief may be granted because plaintiff, though characterizing this claim in her Memorandum of Law as based upon an express contract, has nowhere alleged any promise expressed by Garvin. The Court finds, however, that plaintiff has alleged sufficiently an express promise with respect to bonus compensation, and has also alleged that severance and vacation compensation constituted implied terms of her employment.

■ Defendants insist that the Amended Complaint is devoid of any basis for an express or implied in fact contract claim against Garvin pertaining to bonus compensation. Yet plaintiff has alleged that, upon commencing her employment with Garvin, the terms of her employment included a semi-annual bonus based upon profitability, with a minimum semi-annual payment of 15,000 dollars. In addition, in order to induce her to remain with the company in 1984, Garvin expressly promised to match an offer she had received from another firm. This promise included minimum bonus payments.[13] Further, as plaintiff notes, the course of dealing between the

---

12. The court quoted language from the federal statutes which appeared to allow, under the aegis of "employer," a suit *against an agent of* an employer. *Id.* at 661, 473 N.E.2d at 13.

13. Even should the Court later determine that this three-year agreement is unenforceable based upon the Statute of Frauds, the inclusion of the bonus term is simply further evidence that bonus payments constituted a term of plaintiff's employment.

parties evidences an implied promise that semi-annual bonus payments constituted a term of plaintiff's employment. Thus, plaintiff has adequately pleaded a contract claim with respect to bonus compensation.

■ That the exact amount of the promised bonus payments was not specified is not fatal to plaintiff's claim. Under New York law, if there exists a reasonable basis for calculating the bonus due an employee, a court may enforce the contract term. Bonus history thus may be used to determine an appropriate bonus amount. *See, e.g., Harden v. Warner Amex Cable Communications,* 642 F.Supp. 1080 (S.D. N.Y.1986). *See also Willoughby Camera Stores, Inc. v. Commissioner,* 125 F.2d 607 (2d Cir.1942).

Under these circumstances, a determination whether there exist sufficiently definite guidelines and history to enable the Court to supply a bonus figure is not appropriately before the Court on a motion to dismiss the Amended Complaint. Such a determination must await further development of the evidence. *See Zucker v. Katz,* 708 F.Supp. 525, 533 (S.D.N.Y.1989).

In addition, defendants concede that Garvin has a policy of providing all terminated employees with accrued, unused vacation pay. The Amended Complaint further alleges that Garvin, at all times material to this action, has maintained a policy of awarding severance pay to terminated employees.[14] Plaintiff's fifth cause of action alleges that such compensation terms were understood by the parties to be terms of her employment and thus were part of an implied employment contract between herself and Garvin.

There are less than a handful of cases addressing the question whether, under New York law, the policies and benefit plans of an employer may be considered an implied term of an employment contract. In *Saunders v. Big Brothers, Inc.,* 454 N.Y.S.2d 787, 115 Misc.2d 845 (Civ.Ct.1982), the court noted that the issue presented— "whether internally promulgated regula-

tions governing employee benefits are binding on the employer who issued them"— was one of first impression. *Id.* 454 N.Y. S.2d at 788.

After noting the basic contract principle that "a contract need not be expressly stated but may be implied by the promisor's 'words or conduct' in light of surrounding circumstances," *id.* at 789, the court found that the defendant's written benefits policies created an implied term which modified the at-will employment relationship between the parties. The cases "indicate that provisions contained in company policy manuals are not binding as between employers and employees unless there is substantial evidence that such manual provisions were relied on when the employment contract was entered into." *Luisi v. JWT Group, Inc.,* 488 N.Y.S.2d 554, 559, 128 Misc.2d 291 (Sup.Ct.1985).

■ In light of these decisions, and the general contract principles governing the existence of implied terms in contracts, the Court finds that plaintiff's fifth cause of action may not be dismissed for failure to state a claim upon which relief may be granted. Plaintiff must be allowed to adduce evidence demonstrating the existence of the alleged benefit policies and her reliance on them in entering into the employment relationship with Garvin.

### 4. *The Claim under New York Labor Law § 190*

■ Plaintiff's sixth cause of action alleges that defendants' breach of contract constitutes a failure to pay wages under Article 6 of the New York Labor Law, § 190 *et seq.* (NYLL). Defendants argue that this claim should be limited to any alleged severance or vacation benefits due plaintiff, and that neither unearned future salary nor incentive bonuses constitute "wages" within the meaning of the NYLL.

Under NYLL § 190(1), "wages" are defined as:

**14.** It is not clear from the Amended Complaint or from the parties' papers, and the parties do not discuss, whether such policies were written

or unwritten, and accordingly the Court does not address the significance of this question.

the earnings of an employee for labor or services rendered regardless of whether the amount of earnings is determined on a time, piece, commission or other basis. The term "wages" also includes benefits or wage supplements as defined in Section one hundred ninety-eight-c of this Article....

This provision clearly states that unearned, future payments cannot be considered "wages" under the NYLL. Therefore, insofar as plaintiff's sixth cause of action seeks damages for breach of an alleged three-year employment agreement between herself and Garvin (her fourth cause of action), comprised of unearned future salary and bonuses, it does not state a claim for a violation of NYLL.

Defendants, relying on *Dean Witter Reynolds, Inc. v. Ross*, 429 N.Y.S.2d 653, 75 A.D.2d 373 (App.Div.1980), argue that incentive bonuses, based upon profitability, also do not fall under the NYLL's definition of wages. In support of this proposition, defendants quote the statement in *Ross* that "[t]he term 'wages,' despite its broad definition (§ 190[1]) does not encompass an incentive compensation plan." *Id.* 429 N.Y.S.2d at 658. Plaintiff points out, however, that the above-quoted statement did not comprise the holding of *Ross*, which in fact was far more narrow:

> We hold, therefore, on the record before us, that respondents applied the definition of the term "wages" prematurely in construing the control factors in the incentive compensation plan.

*Id.*

Under the NYLL § 193, an employer may not make deductions from wages except in certain circumstances not applicable here. The employee in *Ross* asserted that his employer had violated this section by deducting certain "control factors," designed to control the quality of the employee's performance, in computing his bonuses.[15] In holding that these deductions did not violate § 193, the court found that the

incentive bonuses did not become "wages" until after these legitimate adjustments had been made.

Plaintiff here does not assert unlawful deductions from wages, but instead contends that bonus payments, already due and vested, have not been paid to her. Such past due bonuses fall within the definition of wages in § 190. *See Watson v. Prentice–Hall, Inc.*, 376 N.Y.S.2d 339, 341, 50 A.D.2d 1077 (1975) (plaintiff properly alleged cause of action for recovery of unpaid bonuses). Thus, Giuntoli's claim for past due bonuses under the NYLL is valid.

### 5. *Punitive Damages*

Finally, defendants argue that punitive damages are unavailable under both ERISA and the New York HRL, and thus that plaintiff's claims for punitive damages should be stricken. Plaintiff contends that resolution of this question should await further development of the evidence.

In her opposition papers, plaintiff states that she seeks punitive damages under ERISA pursuant only to § 502(a)(3), 29 U.S.C. § 1132(a)(3). She acknowledges that all of the U.S. Courts of Appeals that have ruled on the issue have held that extra-contractual damages are not available under this section. *See Drinkwater v. Metropolitan Life Ins. Co.*, 846 F.2d 821, 825 (1st Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 261, 102 L.Ed.2d 249 (1988); *Powell v. Chesapeake & Potomac Tel. Co.*, 780 F.2d 419, 424 (4th Cir.1985), *cert. denied,* 476 U.S. 1170, 106 S.Ct. 2892, 90 L.Ed.2d 980 (1986); *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enterprises, Inc.*, 793 F.2d 1456, 1465 (5th Cir.1986), *cert. denied,* 479 U.S. 1034, 107 S.Ct. 884, 93 L.Ed.2d 837 and *cert. denied* 479 U.S. 1089, 107 S.Ct. 1298, 94 L.Ed.2d 154; *Varhola v. Doe*, 820 F.2d 809, 817 (6th Cir.1987); *Kleinhans v. Lisle Sav. Profit Sharing Trust*, 810 F.2d 618,

---

**15.** These factors included deductions for long distance telephone charges, certain "error" charges, and margin extension charges. "These quality control requirements were designed to assure the absence of credit extensions in customers' cash accounts, the absence of other extraordinary expenses such as long distance calls to clients outside the territory of the branch office and the absence of errors." *Id.*

**510**

627 (7th Cir.1987); *Sokol v. Bernstein* 803 F.2d 532, 534 (9th Cir.1986).

Such a conclusion appears compelled by the Supreme Court's reasoning in *Massachusetts Mutual Life Insurance Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985) and *Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). Accordingly, plaintiff's damages claim is dismissed insofar as she seeks punitive damages under § 502(a)(3) of ERISA.

■ Under the HRL, however, punitive damages may well be available. *See O'Brien v. King World Productions, Inc.,* 669 F.Supp. 639, 642 (S.D.N.Y.1987) ("[t]he plaintiff may also be entitled to punitive damages under the New York [HRL]"); *Selbst v. Touche Ross & Co.,* 587 F.Supp. 1015, 1017 (S.D.N.Y.1984) (under New York law plaintiff might be entitled to punitive damages). Thus, the Court declines to dismiss plaintiffs claim for punitive damages under the HRL at this stage in the proceedings.

### CONCLUSION

In accordance with the foregoing analysis, defendants' motion is granted in the following respects: (1) plaintiff's claim under the NYLL is limited to compensation already due her, and is dismissed insofar as she seeks future unearned salary and benefits as damages for breach of an alleged three-year employment contract, (2) plaintiff's claim for punitive damages under ERISA is stricken. The motion is denied in all other respects. Plaintiff's cross-motion for sanctions pursuant to Rule 11, Fed.R. Civ.P., is denied. The parties are directed to complete discovery on or before April 6, 1990, and to file a joint pre-trial order on or before May 4, 1990.

It is so ordered.