■ WILLIAM B. TRUELOVE, JR., Appellant, v NORTHEAST CAPITAL & ADVISORY, INC., Respondent. [702 NYS2d 147] —Peters, J. P. Appeal from an order of the Supreme Court (Malone, Jr., J.), entered April 12, 1999 in Albany County, which, *inter alia*, granted defendant's motion for summary judgment dismissing the complaint.

Plaintiff, graduating in June 1996 with a Master's degree in business administration, accepted an offer of employment from defendant. In the offer, plaintiff was to be designated as an associate "whose career path is expected to be in a supporting role to revenue producing corporate finance professionals for a period of time not to exceed 30 months". Further detailing how this "apprenticeship position" would ultimately ripen to a "revenue producing role", it specified his compensation to be $40,000 per year, with the potential for "[a] bonus, if paid * * * [to] reflect a combination of the individual's performance and [defendant's] performance".

Defendant's president and chief executive officer, Arthur L. Loomis, II, further described the bonus plan to all employees in memos dated December 12, 1996 and January 12, 1997. The memos explicitly detailed the revenues required to be generated by defendant and the percentage which would be designated for payout as a result thereof; the higher the revenues, the greater the percentage available for payout. In addition, Loomis reminded defendant's employees that "[t]hese terms are guidelines, and will change subject to break-even expense levels, staffing levels, and other factors". The memos further detailed that in order for an eligible employee to participate, the employee's performance must be at least "acceptable" when rated at year end. Additionally, "[a]s a result of prior actions taken by previous employees who received the bonus and then immediately left the firm", payouts were conditioned as follows: "all Bonus payments shall be paid in four installments, on December 31, of the current year, and March 31, June 30 and September 30 of the subsequent year * * * Departures prior to September 30, result in a forfeiture by that employee of any and all subsequent installments. The only conditions under which the Company will not pay these installments are

if the employee is fired for insubordination, willful misconduct, bad faith, or fraudulent intent. Termination for any other reason shall not cause the payments to cease. Similarly, if an individual receives Bonus payments one year and elects to be treated as an hourly employee the next, the payments will still be made, assuming the employee remains at the Company through September 30 of the subsequent year."

In plaintiff's first year, he earned $10,000 in bonuses. By the second year, the firm earned $1.6 million and defendant allocated $240,000 for the "bonus pool", $160,000 of which was designated for plaintiff "due to his and the firm's performance". Such designation further noted that "[t]he payments will be spread over four quarters, commencing December 31, 1997, in conformance with last year's terms". Plaintiff, having received a $40,000 installment on December 31, 1997, commenced this action in February 1998 to compel defendant to pay the remainder of the bonus along with liquidated damages (*see*, Labor Law §§ 193, 198). Shortly thereafter he resigned. Contending that the moneys at issue were not "wages" within the meaning of the Labor Law, defendant successfully moved for summary judgment, prompting this appeal by plaintiff.

Labor Law § 193 (1) provides that "[n]o employer shall make any deduction from the wages of an employee" except under certain enumerated conditions not here relevant. Labor Law § 190 (1) defines "wages" as "the earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis". It is settled that "[t]he term 'wages,' despite its broad definition * * * does not encompass an incentive compensation plan" (*Matter of Dean Witter Reynolds v Ross*, 75 AD2d 373, 381 [citation omitted]; *see, Magness v Human Resource Servs.*, 161 AD2d 418, 419). The dispositive factor in determining whether compensation constitutes wages is not the labeling of the plan but whether the compensation is vested and mandatory as opposed to discretionary and forfeitable (*see, Caruso v Allnet Communication Servs.*, 242 AD2d 484, 484-485).

Compensation will be found to be part of an incentive compensation plan where an employee receives a guaranteed salary and may also receive supplemental income based upon the dual performance of the employee and the business or as a result of other factors outside of the employee's control (*see, Matter of Dean Witter Reynolds v Ross, supra*, at 381; *see also, International Paper Co. v Suwyn*, 978 F Supp 506, 514; *Samuels v Crimmins Contr. Co.*, US Dist Ct, SD NY, Feb. 9, 1993, Sotomayor, J.). This type of discretionary income is distin-

guishable from those situations where an employee may or may not receive a base salary but is determined to have earned commissions based solely upon such employee's own individual efforts (*see, Tuttle v McQuesten Co.*, 227 AD2d 754; *Daley v Related Cos.*, 179 AD2d 55, 59). Where there exists conflicting evidence regarding the nature of the payments received by such employee in addition to a base salary (*see, Caruso v Allnet Communication Servs., supra*, at 484-485; *Mirchel v RMJ Sec. Corp.*, 205 AD2d 388, 389-390; *Weiner v Diebold Group*, 173 AD2d 166, 166-167) or an inconsistent manner with respect to the way in which the amounts could be forfeited (*see, Mirchel v RMJ Sec. Corp., supra*, at 389-390; *Weiner v Diebold Group, supra*, at 166-167), the issue becomes a question of fact.

Here, the undisputed evidence details that plaintiff received a designated salary and became *eligible* to participate in a bonus pool which amounts were determined by the efforts of all employees as well as the profitability of defendant. These amounts were to be determined in Loomis' *sole* discretion, with each recitation of the plan specifically reminding all employees that a real possibility existed that there may be years in which no such bonuses would be awarded. As the forfeiture provisions were clearly detailed and the acknowledgment that a corporation is entitled to fix the terms of a bonus plan and determine the circumstances under which it will be deemed to vest (*see, Hall v United Parcel Serv.*, 76 NY2d 27, 37; *see also, Matter of Dean Witter Reynolds v Ross, supra*, at 381-382; *Weiner v Diebold Group, supra*, at 167-168; *Rosenberg v Salomon, Inc.*, 992 F Supp 513, 516), we conclude that the payments set aside for plaintiff were part of an incentive compensation plan. Plaintiff's voluntary departure from defendant prior to the date for payout of the remaining installments served to forfeit his designated, yet not vested, bonus award (*see, International Bus. Machs. Corp. v Martson*, 37 F Supp 2d 613, 619, 620; *Rosenberg v Salomon, Inc., supra*, at 516; *see also, Hall v United Parcel Serv., supra*, at 37; *Matter of Dean Witter Reynolds v Ross, supra*, at 381-382).

Finding no viable issue of fact that actual payment of the bonus was guaranteed as a term of employment (*cf., Giuntoli v Garvin Guybutler Corp.*, 726 F Supp 494, 508-509; *Mirchel v RMJ Sec. Corp., supra*, at 389-390), Supreme Court properly dismissed this complaint.

Spain, Carpinello, Graffeo and Mugglin, JJ., concur. Ordered that the order is affirmed, with costs.