Cantor Fitzgerald Assoc., L.P. v Mines (2003 NY Slip Op 51528(U))

[*1]

Cantor Fitzgerald Assoc., L.P. v Mines

2003 NY Slip Op 51528(U)

Decided on October 12, 2003

Supreme Court, New York County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on October 12, 2003

Supreme Court, New York County
 CANTOR FITZGERALD ASSOCIATES, L.P., Plaintiff,
against
SCOTT MINES, Defendant.
Index No. 601007/02

Joan A. Madden, J.
Plaintiff Cantor Fitzgerald Associates, L.P., moves for an order pursuant to CPLR 3212 granting summary judgment on its claim to enforce a promissory note. Defendant Scott Mines cross-moves for an order granting summary judgment and dismissing the complaint as barred by article 6 of the Labor Law.
Mines is a former Cantor partner and first vice president of its U.S. dollar interest-rate swaps department. He was also employed as a derivatives broker in that department.
Cantor employed Mines pursuant to an employment agreement dated April 24, 1995. The agreement provides for a three-year term of employment ending April 23, 1998. The agreement obligates Cantor to pay Mines an annual base salary of $250,000, a guarantied total bonus of $500,000 paid in installments, and a participation payment based on gross commissions generated by Mines. The agreement also obligates Cantor to lend Mines $100,000 in exchange for a promissory note. Further, the agreement requires Cantor to forgive repayment of the principal and interest on April 23, 1998, provided that Mines has remained in continuous employment with Cantor through that date.
On April 27, 1995, Cantor made the loan and Mines executed the promissory note. The note provides that the $100,000 principal amount, together with interest at a rate of 7.34% annually, is immediately payable upon the termination of Mines' employment with Cantor for any reason.
During the course of his employment, Mines and Cantor periodically amended the employment agreement. The third amendment, executed on July 23, 1998, is expressly retroactive to, and effective as of, April 1, 1998. The amendment extends the date of forgiveness of the debt to September 30, 2000, provided that Mines remains in Cantor's continuous employ until that date and furnishes Cantor with a check in the amount of all applicable withholding and [*2]employment taxes arising as a result of the discharge.
Mines resigned from Cantor on February 14, 1999. By letter dated February 24, 1999, Cantor demanded payment in full of the principal and interest due on the note. Mines refused to make any payments.
Cantor then commenced this action to enforce the note. Mines moved prior to service of the answer to dismiss the complaint on grounds that the debt had been forgiven on April 23, 1998, pursuant to the terms of the employment agreement, and that enforcement of the note was prohibited as an unauthorized deduction from wages by Labor Law § 193. By decision and order dated January 2, 2003, this Court denied Mines' motion, finding that the July 23, 1999, retroactive amendment extending the forgiveness date is a legally binding agreement between two sophisticated parties and, therefore, enforceable. The Court also based the denial on a finding that Mines, as a highly compensated Cantor vice president and, later, broker, is not entitled to invoke the protections available to workers under the Labor Law. The Court also found that there were issues of fact regarding whether the $100,000 payment in exchange for the note was intended as an incentive compensation plan and, therefore, exempt from Labor Law § 193.
Subsequently, Mines served an answer and the parties conducted and completed discovery. Cantor filed a note of issue on May 8, 2003.
Cantor now moves for summary judgment and enforcement of the promissory note on the ground that Mines' resignation on February 14, 1999, triggered the note's due-on-termination clause.
In opposition, Mines contends that discovery has revealed that he did not work in an executive, administrative or professional capacity, as those terms are defined by the New York State Department of Labor regulations, and, therefore, is entitled to invoke the employee protections set forth in article 6 of the Labor Law. Mines further contends that the statute's prohibition against unauthorized deductions from an employee's salary prohibits enforcement of the note.
Mines does not dispute Cantor's allegations that he executed the note and received $100,000 from Cantor in exchange. The note provides in relevant part that the principal amount, together with interest, "shall immediately become due and payable, without notice or demand, upon the occurrence of * * * termination of [Mines'] employment with [Cantor] or any Affiliate for any reason whatsoever." Mines resigned his position at Cantor on February 14, 1999.
With this proof of execution and failure to pay in accordance with the note's terms, Cantor has established its prima facie entitlement to the relief sought in its motion papers (see Seaman-Andwall Corp. v Wright Machine Corp., 31 AD2d 136 [1st Dept 1968], affd 29 NY2d 617 [1971]). The burden of proof now shifts to Mines to demonstrate with affirmative, admissible evidence a genuine triable issue regarding the existence of a bona fide defense (see Kornfeld v NRX Technologies, Inc., 93 AD2d 772 [1st Dept 1983], affd 62 NY2d 686 [1984]). Mines has failed to meet this burden.
Contrary to Mines' contention, discovery has revealed that Mines is not within any of the categories of employees protected by article 6 of the Labor Law.
Section 191 of the Labor Law regulates payment of wages by employers and creates reciprocal rights of employees. "Except for manual workers, all other categories of employees [*3]entitled to statutory protection under Labor Law § 191 are limited by definitional exclusions of one form or another for employees serving in an executive, managerial or administrative capacity," (Gottlieb v Kenneth D. Laub & Co., 82 NY2d 457, 461 [1993], citing Labor Law §§ 190[5], [6], [7]). Pursuant to sections 190 and 198-c, the unauthorized deduction of wages prohibited in section 193 does not apply to those employed in an "executive, administrative or professional capacity whose earnings are in excess of six hundred dollars a week," (Cohen v ACM Med. Laboratory, Inc., 178 Misc 2d 130, 135 [Sup Ct, Monroe County 1998], affd 265 AD2d 839 [1999]).
Here, the undisputed record demonstrates that Mines' weekly fixed salary exceeded $600 a week. The record also demonstrates that his position with Cantor at the time he executed the promissory note was that of first vice president and derivatives broker in the U.S. dollar interest-rate swaps department. He was also a Cantor partner with an equity participation (see employment agr. § 1[a]). Although, in the first amendment to the employment agreement, dated March 10, 1997, the parties agreed that Mines would be employed solely as a broker and reduced the amount of the guarantied bonus, his responsibilities did not change. In the course of his employment, Mines acted as a middleman and brokered derivatives between Cantor clients, including large institutional investors, some of whom Mines had brought with him from his prior place of employment. When the stock market data at his disposal failed to provide an objective price, Mines would quote a price based on his analysis of the market as a professional with more than 10 years' experience and the holder of a series 63 securities license. In so doing, Mines exercised the independent judgment of an executive. Courts applying New York law have barred brokers and financial industry analysts earning substantial salaries from asserting the protections available to employees within the scope of article 6 (see e.g. DeLeonardis v Credit Agricole Indosuez, 2000 WL 1718543 [SD NY 2000] [vice president and financial analyst earning $170,000 held not within protected class]; Crowe v Gerling Global Reinsurance Corp. of Am., 2000 WL 1470219 [ED Pa 2000] [reinsurance specialist earning $160,000 held not within protected class]; Alter v Bogoricin, 1997 WL 691332 [SD NY 1997] [real estate investment analyst and vice president held not within protected class]).
Mines next contends that the loan secured by the note is not part of an incentive compensation plan, but instead constitutes wages earned by a stated date and that, therefore, repayment of the note would constitute an unauthorized deduction from his wages in violation of Labor Law § 193. Assuming that Mines is entitled to invoke article 6 of the Labor Law, repayment of the $100,000 does not constitute an unauthorized wage deduction.
Section 193 [FN1]
 of the Labor Law prohibits an employer from making any deduction from [*4]the wages of an employee, except certain deductions authorized by the employee or by statute. The prohibition against unauthorized deductions from any payment has been interpreted as referring only to payments from wages (Hudacs v Frito-Lay, Inc., 90 NY2d 342 [1997]). "Wages" are defined by section 190(1) of the Labor Law as "the earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis." "It is settled that '[t]he term "wages," despite its broad definition * * * does not encompass an incentive compensation plan' (Matter of Dean Witter Reynolds v. Ross, 75 A.D.2d 373, 381 [1st Dept 1980] [parallel citation omitted] [citation omitted]). The dispositive factor in determining whether compensation constitutes wages is not the labeling of the plan but whether the compensation is vested and mandatory as opposed to discretionary and forfeitable," (Truelove v Northeast Capital & Advisory Inc., 268 AD2d 648, 649 [3d Dept], affd 95 NY2d 220 [2000], citing Caruso v Allnet Communication Servs., 242 AD2d 484 [1st Dept 1997]). "Receipt of a fixed wage generally negates any inference that a separate incentive payment or purely discretionary bonus constitutes wages," (DeLeonardis v Credit Agricole Indosuez, 2000 WL 1718543, supra; Truelove v Northeast Capital & Advisory Inc., 268 AD2d 648, supra).
 Here, the $100,000 payment is an incentive payment, rather than wages. The payment is characterized as a loan in the employment agreement and is secured by a promissory note binding Mines to repay the loan upon termination of his employment. Mines voluntarily terminated his employment date prior to the date of mandatory discharge of the debt as provided in the third amendment to the employment agreement. In addition, Mines earned a fixed yearly salary payable in equal consecutive semi-monthly installments (see employment agr. § 3[a]).
Moreover, and contrary to Mines' contention, Mines' right to retain the $100,000 did not vest. As this Court held in the prior decision, the third amendment to the employment agreement is binding and enforceable. When employees voluntarily agree to forego certain compensation, they are "held to the bargains made by them with their eyes open," irrespective of the Labor Law prohibitions (Markby v PaineWebber Inc., 169 Misc 2d 173, 180 [Sup Ct, NY County 1996], citing Weiner v Diebold Group, Inc., 173 AD2d 166 [1st Dept 1991]; see Gen. Oblig. Law § 5-1103 [FN2]). The amendment extends the date by which Cantor was required to forgive Mines' repayment obligation to September 30, 2000, provided that Mines remained in Cantor's continuous employ until that date and furnished Cantor with a check in the amount of all applicable withholding and employment taxes arising as a result of the forgiveness. Mines [*5]resigned his employment effective February 14, 1999, and has not furnished Cantor with the required reimbursement check. Therefore, Mines did not perform the required service and Cantor is not obligated to forgive the debt.
Accordingly, it is
ORDERED that the summary judgment motion is granted and the Clerk of the Court is directed enter judgment in favor of plaintiff Cantor Fitzgerald Associates, L.P., and against defendant Scott Mines in the amount of $100,000, together with interest at the rate of 7.34% per annum from the date of February 15, 1999, until the date of entry of judgment, as calculated by the Clerk, and thereafter at the statutory rate, together with costs and disbursements to be taxed by the Clerk upon submission of an appropriate bill of costs.
This constitutes the decision and order of the Court.
Dated: October , 2003
ENTER:
J.S.C.
Decision Date: October 12, 2003
Footnotes

Footnote 1:Section 193 of the Labor Law provides in relevant part that:
 No employer shall make any deduction from the wages of an employee, except deductions which:
a. are made in accordance with the provisions of any law or any rule or regulation issued by any governmental agency; or
b. are expressly authorized in writing by the employee and are for the benefit of the employee; * * *. Such authorized deductions shall be limited to payments for insurance premiums, pension, or health and welfare benefits, contributions to charitable organizations, payments for United States bonds, payments for dues or assessments to a labor organization, and similar benefits for the payment of the employee.

Footnote 2:Section 5-1103 of the General Obligations Law provide in relevant part that, "An agreement * * * shall not be invalid because of the absence of consideration, provided that the agreement * * * shall be in writing and signed by the party against whom it has sought to enforce the change, modification or discharge."