06-3344-cv
Pachter v. Bernard Hodes Group

# UNITED STATES COURT OF APPEALS

## FOR THE SECOND CIRCUIT

––––––––––––––––––

August Term, 2006

(Argued: June 6, 2007)                    Decided: October 12, 2007)

Docket No. 06-3344-cv

––––––––––––––––––––––

ELAINE PACHTER,

*Plaintiff-Appellee,*

— v .—

BERNARD HODES GROUP, INC.,

*Defendant-Appellant.*

––––––––––––––––

Before:        WINTER, B. D. PARKER, *Circuit Judges,* OBERDORFER[*], *District Judge.*

––––––––––––––––

[*] The Honorable Louis F. Oberdorfer, United States District Judge for the District of Columbia, sitting by designation.

Appeal from a judgment of the United States District Court for the Southern District of New York (Patterson, *J.*). Questions certified to the New York Court of Appeals.

_____

HOWARD J. RUBIN, (Raphael Lee, *on the brief*)*,* Davis & Gilbert, New York, N.Y., *for Appellant Bernard Hodes Group, Inc.*

SALVATORE G. GANGEMI, Gangemi Law Firm, New York, N.Y., *for Appellee Elaine Pachter.*

_____

BARRINGTON D. PARKER, *Circuit Judge*:

We believe that the resolution of this case turns on undecided questions arising under Article 6, section 193 of the New York Labor Law: (1) whether an executive is an "employee," and consequently covered by its provisions limiting deductions from wages; and (2) when are commissions "earned" and consequently "wages" which are subject only to limited subsequent deductions? We therefore certify these questions to the New York Court of Appeals.

## I. BACKGROUND

The facts in this case are essentially undisputed. Bernard Hodes Group, Inc. ("Hodes") is a recruitment, marketing and staffing services company. From April 1992 to December 2003 Elaine Pachter was employed by Hodes as an account representative with the title of Vice President, Management Supervisor. Her responsibilities included preparing, placing and servicing advertisements in various types of media for Hodes' clients. Pachter's compensation,

2

which exceeded $100,000 in many years, took the form of commissions based on a percentage of monthly billings. To pay for advertising, Hodes advanced payment on behalf of the client to the various media companies with which it did business, subject to later reimbursement from the client. Pachter's commissions were calculated on billings to the client (for amounts previously advanced by Hodes) and on a service fee charged by Hodes for Pachter's services.

Pachter's monthly commissions were subject to a number of deductions that are the crux of this litigation. The deductions included business costs Hodes attributed to Pachter such as finance charges, a portion of the costs attributable to her assistant, late fees, uncollectible advances and bad debts.[1] Pachter received monthly commission statements detailing gross billings and applicable deductions.[2]

After she left Hodes, Pachter sued in the United States District Court for the Southern District of New York (Patterson, *J.*) challenging the deductions. She asserted various claims under Article 6, section 193 of the New York Labor Law which proscribes all but a small category

---

[1] Specifically, these costs were: (1) finance charges: a 1% or 1.5% charge assessed when Pachter failed to obtain payment from the client within sixty and ninety days respectively; (2) assistant salary and benefits: 50% of the costs of an assistant allocated to Pachter; (3) errors: 50%-100% of losses allocated to Pachter when her clients refused to pay for particular ad placements because of errors that occurred in placing or purchasing media, thereby leaving the advance payment made by Hodes to the media company unreimbursed; (4) bad debt: 50% of losses assessed whenever one of Pachter's clients were unable to pay their bill ("bad debt"); (5) unbillables: 50% of losses assessed whenever one of Pachter's clients were unwilling for reasons other than errors to pay for part or all of their bill ("unbillables"); (6) miscellaneous costs: Pachter's travel and entertainment expenses, marketing expenses and other expenses related to her work, which the company advanced and Pachter was required to repay.

[2] It is not disputed that Pachter knew of, and essentially acquiesced in, these deductions while employed at Hodes.

of deductions from the "wages" of "employees." Hodes's primary defenses were, first, that because Pachter was an "executive" and not an "employee," she was not covered by section 193 and, secondly, that the deductions were not from the commissions but were used to calculate the commissions in the first instance.

Subsequently, both parties moved for summary judgment and Pachter prevailed. Judge Patterson concluded that, despite suggestions to the contrary in New York case law, section 193 covered executives such as Pachter. In addition, the court rejected Hodes' argument that the adjustments to gross commissions were a part of the formula that determined Pachter's wages and not deductions. The court entered judgment in favor of Pachter for the amounts deducted ($153,817.51), statutory interest, and the attorney's fees mandated by the Labor Law. This appeal followed.

## II. DISCUSSION

### A. Certification

Under New York State law and Second Circuit Rule § 0.27, we may certify a question where "an unsettled and significant question of state law . . . will control the outcome of a case pending before this court." 2d Cir. R. § 0.27; *see* 22 N.Y.C.R.R. § 500.27 (permitting certification where a case involves determinative questions of state law "for which no controlling precedent of the Court of Appeals exists"). In determining whether certification is appropriate, we consider: "'(1) the absence of authoritative state court interpretations of [the law in question]; (2) the importance of the issue to the state, and whether the question implicates issues of state public policy; and (3) the capacity of certification to resolve this litigation.'" *ITC, Ltd v.*

4

*Punchgini*, 482 F.3d 135, 166 (2d Cir. 2007) (quoting *Morris v. Schroder Capital Mgmt. Int'l*, 445 F.3d 525, 531 (2d Cir. 2006)). We believe these requirements are met.

**B.     An Executive as an "Employee"**

Section 193 provides that: "[n]o employer shall make any deduction from the wages of an *employee,*" except for authorized deductions for insurance premium payments, pension or health and welfare benefits, contributions to charitable organizations, payments for United States bonds, union dues, and "similar payments for the benefit of the employee." N.Y. Labor Law § 193(1) (emphasis added). Section 190 defines "employee" as "any person employed for hire by an employer in any employment." *Id*. § 190(2). Based on these provisions, section 193 appears to broadly apply to all "employees" including executives.

A separate provision of Article 6, section 191, details the frequency of payments for specific workers – manual workers, railroad workers, commission salesmen, and "clerical and other worker[s]." N.Y. Labor Law § 191. Section 190 defines the latter three categories to exclude employees working in an executive capacity. *Id*. § 190(5)-(7).

Our consideration of section 190 in relation to sections 191 and 193 suggests that section 193 applies to all employees regardless of their position, while section 191 applies only to non-executive employees in the specified categories.[3] New York courts, however, do not agree on whether section 193 (or any of the other provisions of Article 6) protects executives. *See Hart v.*

---

[3] In addition, section 198-c, which makes an employer's failure to pay benefits or supplements a misdemeanor, provides that "[t]his section shall not apply to any person in a bona fide executive, administrative, or professional capacity whose earnings are in excess of six hundred dollars a week." N.Y. Labor Law § 198-c(3). Again, the limitation appears to apply only to that particular section and sheds little light on the appropriate scope of section 193.

*Dresdner Kleinwort Wasserstein Sec., LLC*, No. 06 Civ. 0134, 2006 U.S. Dist. LEXIS 56710, at *11-12 (S.D.N.Y. Aug. 9, 2006) ("Courts in New York are divided as to whether executives are covered under Article 6.").

The disagreement arises from varying interpretations of the New York Court of Appeals decision in *Gottlieb v. Kenneth D. Laub & Co.*, 82 N.Y.2d 457 (1993), where the Court said in dicta that "[e]xcept for manual workers, all other categories of employees entitled to statutory protection under [section 191] are limited by definitional exclusions of one form or another for employees serving in an executive, managerial or administrative capacity." *Id.* at 461. The court also said that "[c]ertainly nothing in the language of that enactment [Article 6] suggests that it was intended to provide any remedy whatsoever for the successful prosecution of a common-law civil action for contractually due remuneration on behalf of employees who *in all other respects are excluded from wage enforcement protection under recodified article 6 of the Labor Law.*" *Id.* at 462 (emphasis added).

In reliance on *Gottlieb*, federal district courts and New York appellate courts have concluded that executives are not covered by section 191 and Article 6. *See, e.g., Bierer v. Glaze, Inc.*, No. Cv-05-2459, 2006 U.S. Dist. LEXIS 73042, at *29 (E.D.N.Y. Oct. 6, 2006) (noting that courts have construed statute so that "Article 6 does not cover employees in executive, administrative, or professional capacities"); *Kaplan v. Aspen Knolls Corp.*, 290 F. Supp. 2d 335, 340 (E.D.N.Y. 2003) ("[E]mployees serving in an executive capacity are excluded from the protection of Labor Law Article 6."); *Rice v. Scudder Kemper Invs., Inc.*, No. 01 Civ. 7078, 2003 U.S. Dist. LEXIS 14239, at *11-12 (S.D.N.Y. Aug. 14, 2003) (following *Gottlieb* and holding that

6

"[p]laintiff's status as an executive also deprives him of the ability to recover attorney's fees and costs under § 198."); *Craven v. Verify Med., Inc.*, No. 96 Civ. 6091, 2001 U.S. Dist. LEXIS 23833, at *6 (E.D.N.Y. Dec. 5, 2001) ("The New York Court of Appeals has recognized that the Labor Law does not apply to 'employees serving in an executive, managerial or administrative capacity.'" (quoting *Gottlieb*, 82 N.Y.2d at 461)); *Davidson v. Regan Fund Mgmt.*, 13 A.D.3d 117, 118, 786 N.Y.S.2d 47, 49 (1st Dep't 2004) (citing *Gottlieb* and holding that "[p]laintiffs cause of action under Labor Law § 198(1-a) was properly dismissed on a finding that he was employed in an executive capacity"); *Taylor v. Blaylock & Partners*, *L.P.*, 240 A.D.2d 289, 292, 659 N.Y.S.2d 257, 260 (1st Dep't 1997) ("A claim for attorneys' fees predicated on Labor Law § 198 is limited to wage claims based upon violations of one or more substantive provisions of Labor Law article 6 which excludes salary claimed by an executive." (internal quotation marks and citations omitted)); *Carlson v. Katonah Capital, LLC.*, 814 N.Y.S.2d 889 (table), 2006 N.Y. Misc. LEXIS 129, at *3-4 *(*N.Y. Sup. Ct. 2006) ("[t]he Appellate Division, First Department, relying on *Gottlieb* . . ., has made clear that executives do not qualify as employees for the purposes of asserting wage claims under Article 6.").

On the other hand, since *Gottlieb*, a number of federal district courts and New York state appellate courts have held that section 193 covers executives. *See, e.g., Monagle v. Scholastic, Inc.*, No. 06 Civ. 14342, 2007 U.S. Dist. LEXIS 19788, at *3-4 (S.D.N.Y. March 9, 2007) (assuming, without deciding, that "there is no basis for excluding executives . . . from § 190(2)'s broad definition of 'employee'"); *Hart*, 2006 U.S. Dist. LEXIS 56710, at *11-14 (holding that executives are covered under section 194 in spite of the *Gottlieb* dicta); *Miteva v. Third Point*

7

*Mgmt. Co.,* 323 F. Supp. 2d 573, 585  (S.D.N.Y. 2004) (ruling that the text of Article 6 supports a broad reading of the term "employee" so as to include executives, administrators and managers); *Gennes v. Yellow Book of N.Y., Inc.*, 23 A.D.3d 520, 521, 806 N.Y.S.2d 646 (2d Dep't 2005) (upholding application of Labor Law § 193 to "account executives")*; Tuttle v Geo. McQuesten Co.*, 227 A.D.2d 754, 755-56, 642 N.Y.S.2d 356, 57-58 (3d Dep't 1996) ("[S]ince the specific statutory violations alleged here make continual reference to the general term 'employee,' plaintiff must be afforded statutory protection." (internal citations omitted)).

While our inclination would be to defer to the text of section 193 and conclude that executives are covered, we are reluctant to do so in light of the sharp disagreement in the courts over this issue of state law.  The issue is self-evidently fundamental to Article 6 since its resolution potentially affects large numbers of employees and employers throughout New York.[4] Consequently, we believe this question is best resolved by the Court of Appeals.

## C.     Deductions from Commission

Hodes also maintains that, even if Pachter is covered by section 193 as an "employee," the deductions in question would be proper because section 193 regulates deductions from wages, not the subtractions pursuant to a commission formula she experienced.  The term "wages" is defined by section 190 as "the earnings of an employee for labor or services rendered, regardless of

---

[4] We observe that if the definitions applicable to section 191 are somehow interposed on section 193, more than just executives would be excluded.  For example, the definition of "clerical and other workers" excludes anyone working in *any* administrative or professional capacity who earns more than six hundred dollars a week.  N.Y. Labor Law § 190(7).  The adoption of that definition has the potential to exclude a broad array of employees from section 193 protection.

whether the amount of earnings is determined on a time, piece, commission or other basis." N.Y. Labor Law § 190. Hodes argues that Pachter did not have a vested right to her commissions – in other words, they are not *earned* commissions – until after all agreed-to adjustments were made.

When a commission becomes "earned" so that an employee has a "vested right" to these moneys usually depends on the terms of an agreement providing for the commission. *Tuttle*, 227 A.D.2d at 756; *Gennes*, 23 A.D.3d at 521. Once "earned," it is clear that deductions other than those set forth in section 193 are improper. *See Gennes*, 23 A.D.3d at 521; *Edlitz v. Nipkow & Kobelt, Inc.*, 264 A.D.2d 437, 694 N.Y.S.2d 439, 440 (2d Dep't 1999); *see also Dean Witter Reynolds v. Ross*, 75 A.D.2d 373, 381, 429 N.Y.S.2d 653 (1st Dep't 1980) (holding that employee does not acquire a vested right to payments until after adjustments or conditions have been met pursuant to the terms of the agreed-to bonus plan).

In this case, no written agreement exists. However, under common law, in the absence of a written agreement, a commission is deemed to have been earned "upon sale." *See Jacobs v. Macy's East, Inc.*, 262 A.D.2d 607, 608-09, 693 N.Y.S.2d 164, 166 (2d Dep't 1999) (denying dismissal of a complaint for improper deductions under section 193 where plaintiffs alleged that no contract existed and that their commissions were therefore earned upon sale); *see also Srour v. Dwelling Quest Corp.*, 5 N.Y.3d 874, 875 (2005) (observing that, absent an agreement to the contrary, "the common-law rule is that 'a broker who produces a person ready and willing to enter into a contract upon his employer's terms . . . has earned his commissions.'") (quoting *Feinberg Bros. Agency v. Berted Realty Co.*, 70 N.Y.2d 828, 830 (1987).

This rule broadly applies to "conventional" brokerage relationships. *See Lane – The Real*

*Estate Dep't Store, Inc. v. Lawlet Corp.*, 28 N.Y.2d 36, 42 (1971) ("[I]t is a well-settled rule in this State that in the absence of an agreement to the contrary, a real estate broker will be deemed to have earned his commission when he produces a buyer who is ready, willing and able to purchase at the terms set by the seller."); *Wagner v. Derecktor*, 306 N.Y. 386, 390 (1954); *Shulman v. Lin*, 99 A.D.2d 856, 857, 472 N.Y.S.2d 777, 778 (3d Dep't 1984). This appeal presents features of a conventional brokerage relationship. Pachter arguably brokered the sale of advertising space between Hodes and its clients. Though the caselaw is somewhat ambiguous, under the common law rule, her commission could be considered "earned" either when: (1) payment is advanced by Hodes to the media company; (2) a client is presented a bill that includes Hodes' fee; or (3) she initially secures the client's commitment. Under any of these scenarios, the commission would have been "earned" prior to the deductions. However, neither the Court of Appeals nor the state appellate courts have definitively addressed the applicability of this common law rule to section 193 and the definition of "wages" in Article 6. This lack of guidance, coupled with obvious importance of this issue to employers and commission-based wage earners throughout New York, indicates to us that certification is appropriate. *See Green v. Montgomery*, 219 F.3d 52, 60 (2d Cir. 2000).

### III. CONCLUSION

Pursuant to Second Circuit Local Rule § 0.27 and New York Court of Appeals Rule § 500.27, we certify the questions below to the New York Court of Appeals which may, of course, reformulate or expand upon these questions as it wishes.

It is hereby ORDERED that the Clerk of the Court transmit to the Clerk of the New York

Court of Appeals a Certificate in the form attached, together with a copy of this opinion and a complete set of the briefs, appendices, and record filed by the parties in this Court. This panel will retain jurisdiction to decide the case once we have had the benefit of the views of the New York Court of Appeals, or if that court declines certification. Finally, we order the parties to bear equally any fees and cost that may be requested from the New York Court of Appeals.

## CERTIFICATE

The following questions are hereby certified to the New York Court of Appeals pursuant to Second Circuit Local Rule § 0.27 and 22 N.Y.C.R.R. § 500.27, as ordered by the Court of Appeals for the Second Circuit:

(1) Whether an "executive" is considered an "employee" for purposes of New York Labor Law Article 6, section 193, and thereby subject to the protections of that provision?

(2) In the absence of a governing written agreement, when are commissions "earned" and therefore considered "wages" under sections 191 and 193, thereby rendering most subsequent deductions unlawful?